477 So.2d 553 (1985)
Clarence Edward HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 63902.
Supreme Court of Florida.
October 10, 1985.
Rehearing Denied November 19, 1985.
Michael E. Allen, Public Defender, and Steven L. Bolotin, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Clarence Edward Hill appeals his conviction for first-degree murder and the imposition of the death penalty for the killing of a police officer during a bank robbery. Hill was also convicted of attempted first-degree *554 murder, three counts of armed robbery, and the possession of a firearm during the commission of a felony. He received consecutive life sentences for the attempted murder and armed robbery convictions. No sentence was imposed for the possession of a firearm conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
We affirm all of appellant's convictions and sentences with the exception of the death sentence. We find that the trial court erred during the jury selection process and that, consequently, we must vacate the death sentence and remand for a new sentencing proceeding before a new jury. We also note that improper prosecutorial comments were made during the course of this trial, but find that, under the circumstances of this cause, the error was harmless.
The facts of this cause are as follows. On October 19, 1982, appellant stole a pistol and an automobile in Mobile, Alabama. Later that day, appellant and his accomplice, Cliff Jackson, drove to Pensacola and robbed a savings and loan association at gunpoint. When the police arrived during the robbery, appellant fled out the back of the savings and loan building. Jackson exited through the front door, where he was apprehended immediately. Appellant approached two police officers from behind as they attempted to handcuff Jackson. Testimony established that appellant drew his pistol and shot the officers, killing one and wounding the other. A gun battle ensued, during which appellant received five bullet wounds.
The jury returned guilty verdicts on all counts and, by a vote of 10 to 2, recommended that the death penalty be imposed. The trial court sentenced appellant to death for the murder conviction after finding five aggravating circumstances.
Appellant challenges his conviction and sentence on eleven grounds. Appellant asserts that the trial court erred: (1) in excusing for cause two jurors based on their views toward the death penalty; (2) in refusing to excuse for cause two jurors because of their preconceived opinions regarding this case; (3) in denying his motion for a change of venue; (4) in denying his motion for individual and sequestered voir dire; (5) in denying his request for additional peremptory challenges; (6) in denying his motions for mistrial based on alleged prosecutorial misconduct; (7) by allowing the state to introduce testimony concerning irrelevant collateral crimes; (8) by allowing the state to introduce into evidence photographs of the victim's body taken during the autopsy; (9) in refusing to give the jury specific instructions as to nonstatutory mitigating circumstances it could consider; (10) in failing to specify in its sentencing order which mitigating circumstances it considered; and (11) in finding that the murder was committed in a cold, calculated, and premeditated manner. Appellant also claims that the cumulative nature of the trial court's alleged errors deprived him of a fair trial. After a thorough review of the record, we find that none of the asserted errors affected appellant's conviction. With respect to the penalty phase, we conclude that we need only address the failure of the trial court to excuse for cause an allegedly biased juror. Our disposition of that issue makes it unnecessary to consider other penalty phase errors asserted by appellant.
Appellant contends that a prospective juror, Johnson, exhibited a strong bias in favor of imposing the death penalty on appellant based on the opinion he had formed as a result of the media coverage of this case, and that this opinion mandated Johnson's excusal for cause. Appellant expressly recognizes that his argument on this issue is directed only to the penalty phase of the trial. The voir dire examination disclosed that Johnson was about two blocks from the scene of the crime at the time it occurred; that he noticed the commotion, turned on the radio and heard a news report concerning the event; that he did not go to the scene; that he discussed the case at length with his wife, who is a former bank teller, and with a fellow employee whose husband is a police officer; *555 that he followed media reports concerning this case, although he did not recall specific facts; that based on what he read and heard, he had formed an opinion as to the guilt or innocence of those charged with the crimes; and that he believed he could set the opinion aside and listen to the case presented in court. When asked whether he would let his prior opinion enter into his decision, he replied, "That's a hard decision to make right now. I think I can say I can. I don't know for sure." The voir dire transcript also reveals the following colloquy:
PROSECUTOR: Have you ever thought about what type of case would deserve a death sentence?
JOHNSON: Yes, sir, premeditated murder, and felony murder.
When asked by defense counsel how he was going to keep his preconceived opinion from affecting his deliberations, Mr. Johnson answered as follows:
Well, basically, like I said, I have not associated that opinion with Mr. Hill. It was just a blank feeling that ... someone that shoots someone else should be punished.
... .
I feel anyone that shoots anyone else in the type of incident as much as I know about it now, the death penalty should be imposed upon them. That's basically what I felt at the time.
(Emphasis supplied.) Later in the inquiry, with regard to the imposition of the death penalty, defense counsel asked:
Do you feel like from under the facts that you know now, do you feel like this might be an appropriate case?
JOHNSON: I don't feel I have really been given any more facts than I have before coming into the courtroom.
DEFENSE COUNSEL: You formed an opinion before though?
JOHNSON: Yes, sir.
DEFENSE COUNSEL: Have you discarded that opinion?
JOHNSON: Not necessarily.
DEFENSE COUNSEL: Do you feel that in all cases of premeditated murder that the death penalty should be applied?
JOHNSON: It's a hard question to answer.
DEFENSE COUNSEL: Yes, sir, sure is.
JOHNSON: I'm not saying in all cases, dependent upon the evidence.
DEFENSE COUNSEL: Are you still inclined towards the death penalty in this case if in fact there is a conviction?

JOHNSON: Yes, sir.

DEFENSE COUNSEL: That's the presumption that you came into this court with?

JOHNSON: Yes, sir.

(Emphasis supplied.)
Trial counsel for appellant challenged Johnson for cause on the ground that Johnson had formed an opinion as to the penalty to be imposed in this case. When the trial court denied the challenge, appellant expended a peremptory challenge on Johnson. Appellant subsequently exhausted his peremptory challenges. The trial judge denied appellant's request for additional peremptory challenges and his challenge for cause to all remaining prospective jurors.
This Court recently stated: "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). In applying this test, the trial courts must utilize the following rule, set forth in Singer v. State, 109 So.2d 7 (Fla. 1959):
[I]f there is a basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial[,] he should be excused on motion of a party, or by [the] court on its own motion.
Id. at 24. In Singer, we reaffirmed the proposition that the "statement of a juror that he can readily render a verdict according to the evidence, notwithstanding an *556 opinion entertained, will not alone render him competent if it otherwise appears that his formed opinion is of such a fixed and settled nature as not readily to yield to the evidence." Id. at 22 (quoting Olive v. State, 34 Fla. 203, 206, 15 So. 925, 926 (1894)). In other early cases this Court stated that "jurors should if possible be not only impartial, but beyond even the suspicion of partiality," O'Connor v. State, 9 Fla. 215, 222, (1860), and that "[i]f there is a doubt as to the juror's sense of fairness or his mental integrity, he should be excused." Johnson v. Reynolds, 97 Fla. 591, 598, 121 So. 793, 796 (1929).
Singer involved a defendant's challenge for cause to a prospective juror whose statements during voir dire revealed he had preconceived ideas regarding the guilt of the defendant, who was charged with the murder of the county prosecuting attorney's wife. After concluding that there was a reasonable doubt as to whether the prospective juror would be able to render a fair and impartial verdict on the evidence, this Court determined that he should have been excused for cause. We also recognized in Singer that the question of a challenged juror's competency is a mixed question of law and fact and that the decision of the trial court should not be disturbed unless the error is manifest.
We are unable to distinguish the circumstances under which error was found in Singer from the circumstances in this record. It is exceedingly important for the trial court to ensure that a prospective juror who may be required to make a recommendation concerning the imposition of the death penalty does not possess a preconceived opinion or presumption concerning the appropriate punishment for the defendant in the particular case. A juror is not impartial when one side must overcome a preconceived opinion in order to prevail. When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial recommendation as to punishment, the juror must be excused for cause. See Thomas v. State, 403 So.2d 371 (Fla. 1981). This record clearly reflects that juror Johnson did not possess the requisite impartial state of mind. We find the trial judge in this case failed to apply the rules of law set forth in Singer. Consequently, his discretionary authority is not in issue in this proceeding.
The next question we must resolve is whether it was harmless error for the trial court to refuse to dismiss Johnson for cause. We find that such error cannot be harmless because it abridged appellant's right to peremptory challenges by reducing the number of those challenges available him. Florida and most other jurisdictions adhere to the general rule that it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied. See Singer; Leon v. State, 396 So.2d 203 (Fla. 3d DCA 1981). See also Wasko v. Frankel, 116 Ariz. 288, 569 P.2d 230 (1977); Jones v. Cloud, 119 Ga. App. 697, 168 S.E.2d 598 (1969); State v. Sugar, 408 So.2d 1329 (La. 1982); State v. Ternes, 259 N.W.2d 296 (N.D. 1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978); Commonwealth v. Jones, 477 Pa. 164, 383 A.2d 874 (1978); Martin v. Commonwealth, 221 Va. 436, 271 S.E.2d 123 (1980). We conclude that the denial of appellant's challenge for cause directed to Johnson was reversible error requiring a new sentencing hearing before a new jury.
Appellant has also alleged several instances of improper prosecutorial comment during the trial. We find the prosecutor acted improperly by asking the jury to consider him a "thirteenth juror" when it retired to deliberate its verdict in the guilt phase, but find the error harmless under the circumstances of this cause. See United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Had the case involved substantial factual disputes, this "inexcusable prosecutorial overkill" would have resulted *557 in harmful error requiring reversal of each of appellant's convictions. Teffeteller v. State, 439 So.2d 840, 845 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). We again caution prosecutors to note that repeated failure to curb this misconduct adds fuel to the flame of those who advocate the adoption of a per se rule of reversal for such misconduct.
We find that none of the alleged trial court errors asserted by appellant affected his convictions. Accordingly, we affirm appellant's convictions and sentences with the exception of the death sentence. For the reasons expressed, we vacate the sentence of death and remand for a new sentencing proceeding before a new jury.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the convictions, but dissents from the sentences.