569 So.2d 1225 (1990)
James FLOYD, Appellant,
v.
STATE of Florida, Appellee.
No. 72207.
Supreme Court of Florida.
September 13, 1990.
Rehearing Denied December 11, 1990.
*1228 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
James Floyd appeals the reimposition of the death penalty.[1] In Floyd v. State, 497 So.2d 1211 (Fla. 1986), we affirmed Floyd's conviction of first-degree murder, vacated the sentence of death, and remanded for a resentencing hearing before a jury. We affirm the new sentence of death.
The state's case at resentencing revealed that on January 17, 1984, the St. Petersburg Police Department received a telephone call requesting police to check on the welfare of Annie Barr Anderson, who was eighty-six years old. Upon arrival at Anderson's home, Officer Ray Olsen was met by Anderson's pastor. He explained that he was concerned because he had not seen Anderson that day, her car was in the rear driveway, her newspaper had not been picked up, her mail remained in the mail box, and she failed to answer after several knocks on her door. Olsen entered the home through the unlocked back door and discovered Anderson lying on her bed, dead. The medical examiner testified that Anderson had received multiple stab wounds, one to the upper chest that penetrated the heart and was rapidly fatal; eleven to the abdomen that were potentially fatal; and one in the left wrist that exited the hand.
Officer Donald Crotty of the St. Petersburg Police Department testified that Floyd cashed a $500 check on Anderson's account on January 16, 1984. Two days later, the bank summoned police when Floyd tried to cash a $700 check on her account. When detectives confronted Floyd, he fled. The detectives gave chase, arrested Floyd, and discovered Anderson's checkbook in his pocket. The detectives also discovered in Floyd's jacket an athletic sock containing dried blood. Officer Robert Engelke testified that the blood on the sock was consistent with Anderson's blood type, but not Floyd's. The officer also testified that tire tracks on the driveway alongside Anderson's home were similar to the tire tread on Floyd's motorcycle.
In mitigation, the defense offered the testimony of numerous witnesses who had known Floyd for many years. Eula Williams regarded Floyd as a son. She stated that he was always respectful and helpful to her, especially in maintaining her yard. Rex Estelle, Floyd's supervisor at the First Baptist Church, testified that Floyd had been a willing and good worker and had been promoted to custodian about six months before the murder.
Floyd's father died of cancer within one year before the murder. Estelle testified that after Floyd's father died, Floyd exhibited extreme mood swings and had been fired after the church discovered missing property and money. Evidence also *1229 showed that Floyd's mother was an alcoholic who was hospitalized for her illness.
Thomas Snell, a police communications officer who had known Floyd for fifteen years, testified that Floyd took over Floyd's father's lawn service business after his death. Floyd was known as a conscientious, dependable, and hard worker who cared for his family during the period surrounding his father's demise and mother's alcoholism. He never knew Floyd to be a violent person or to have been in any kind of trouble.
Floyd's mother urged the jury to spare her son's life. Ann Shirley Anderson, the victim's daughter, testified that she corresponded with and visited Floyd in prison, and she urged the jury to consider that "[t]he people that God gives life to are worthwhile." Defense counsel proffered additional testimony from Ms. Anderson. He asked whether she thought that Floyd should be executed for his crimes, and she responded that he should not be executed. The trial court ruled that Ms. Anderson could not express her opinion about the specific sentence to be imposed in the case.
The jury recommended the death penalty by a vote of eight to four. The trial court found two aggravating circumstances[2] and no mitigating circumstances, and it sentenced Floyd to death.
Floyd asserts that various errors warrant a new penalty proceeding. First, Floyd, a black man, contends that the state exercised a peremptory challenge to excuse a prospective juror for racially motivated reasons. When the state moved to challenge juror Edmonds, the sole black prospective juror remaining on the panel,[3] defense counsel objected in a timely manner. As an explanation for excusing Edmonds, the prosecutor alleged that when asked about the propriety of the death penalty Edmonds had said that twenty-five years' imprisonment was sufficient punishment. The trial court accepted the state's explanation, although the court conceded that it did not recall what Edmonds had said on that subject, noting that the juror's "answer ... is on the record."[4]
There is no question that the state's explanation was race-neutral, and if true, would have satisfied the test established in State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), and State v. Slappy, 522 So.2d 18, 22 (Fla. 1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). It is uncontroverted, however, that the explanation was not true. At oral argument, the state conceded that the record indicates that Edmonds never made such a statement. Thus, we must determine the parameters of the trial court's responsibility to ascertain if the state has satisfied its burden of producing a race-neutral reason for the challenge.
It is the state's obligation to advance a facially race-neutral reason that is supported in the record. If the explanation is challenged by opposing counsel, the trial court must review the record to establish record support for the reason advanced. However, when the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged. Once the state has proffered a facially race-neutral reason, a defendant must place the court on notice that he or she contests the factual existence of the reason. Here, the error was easily correctable. Had defense counsel disputed the state's statement, the court would have been compelled to ascertain from the record if the state's assertion was true. Had the court determined that there was no factual basis for the challenge, the state's explanation no longer could have *1230 been considered a race-neutral explanation, and Juror Edmonds could not have been peremptorily excused. Because defense counsel failed to object to the prosecutor's explanation, the Neil issue was not properly preserved for review. We reject Floyd's first claim of error.
Next, Floyd contends that the trial court should have excused prospective juror Hendry for cause. Floyd's claim is based on the following colloquy:
MR. HENDRY: I think there is some kind of a deterrent for capital crimes. If you don't, I think there would be more capital crimes. In some circumstances, premeditated murder proven beyond a reasonable doubt, I think the death penalty is warranted.
MR. LOVE [Defense Counsel]: Okay. So, I just want to be clear, sir. If you have a premeditated murder, somebody's been pounding, what have you, on the system, that the death penalty would be warranted under your views?
MR. HENDRY: Right.
MR. LOVE [Defense Counsel]: Do you think that's the case in all cases of those premeditated, finding death penalties warranted?
MR. HENDRY: Yes.
Hendry's response to defense counsel belies the state's claim that he could render an impartial verdict. As we said in Hill v. State, 477 So.2d 553 (Fla. 1985):
A juror is not impartial when one side must overcome a preconceived opinion in order to prevail. When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial recommendation as to punishment, the juror must be excused for cause.
Id. at 556. Hendry's unqualified predisposition to impose the death penalty for all premeditated murders warranted excusal for cause. Hamilton v. State, 547 So.2d 630, 632-33 (Fla. 1989); Moore v. State, 525 So.2d 870, 872-73 (Fla. 1988); Hill, 477 So.2d at 556.
However, our inquiry does not end there. Although the trial court erred in failing to excuse Hendry for cause, reversal is warranted under our case law only if Floyd exhausted his peremptory challenges, requested additional peremptories, and had that request denied by the trial court. See Hamilton; Moore; Hill. Although Floyd used a peremptory to remove juror Hendry, and he exhausted his peremptory challenges, he failed to request any additional peremptories to replace the one used to excuse juror Hendry. Nor did he show that a juror unacceptable to him served on the jury. Thus, Floyd failed to preserve his position for appeal. Reilly v. State, 557 So.2d 1365, 1367 (Fla. 1990); Hill, 477 So.2d at 556; Young v. State, 234 So.2d 341, 348-49 (Fla. 1970), receded from on other grounds, State v. Retherford, 270 So.2d 363 (Fla. 1972), cert. denied, 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973); Rollins v. State, 148 So.2d 274, 276 (Fla. 1963).
We reject Floyd's third claim that the trial court erred in preventing Anderson's daughter from expressing her opinion that Floyd should not receive the death penalty. The trial court permitted Anderson to testify about her knowledge of Floyd's character, based upon her correspondence and visits with him in prison. The court's decision to prevent her from further testifying about her opinion as to whether Floyd should be executed was not an abuse of discretion.
Fourth, Floyd contends that the trial court admitted irrelevant and prejudicial testimony from his cell mate, Greg Anderson. Anderson testified without objection that Floyd admitted to him that he had broken into a woman's home; that he was "ripping her off" when she surprised him; and that he used a knife to kill her. Then, over objection, the court permitted Anderson to testify that Floyd threatened to "get him" when he learned that Anderson was to be a witness against him.
Anderson's testimony that Floyd had told him that he had murdered a woman during the course of burglarizing her home was admissible. § 90.803(18), Fla. Stat. (1983). This testimony was relevant to establishing the aggravating circumstance of murder *1231 committed during a burglary, section 921.141(5)(d), Florida Statutes (1983), which must be proved beyond every reasonable doubt. Anderson's testimony that Floyd threatened him was relevant to proving Floyd's guilty knowledge of the burglary. Sireci v. State, 399 So.2d 964, 968 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981).
Floyd next contends that the state on two occasions improperly introduced evidence of his criminal record. On the first occasion, Officer Greg Totts testified that Floyd made the following statement when police booked him for forgery: "`I know that the police are mad at me for running, but I have been in jail before and I was afraid.'" The state argues that we previously determined that this testimony was admissible and the issue should not be relitigated.
In our earlier opinion, we said that this statement was admissible during the guilt phase because it was relevant to the issue of flight. Floyd, 497 So.2d at 1213. However, we did not consider its admissibility for the purposes of the penalty phase. To be admissible in the penalty phase, state evidence must relate to any of the aggravating circumstances. Trawick v. State, 473 So.2d 1235, 1240-41 (Fla. 1985), cert. denied, 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986); Elledge v. State, 346 So.2d 998, 1001-02 (Fla. 1977); § 921.141(1), Fla. Stat. (1983). Flight was not an issue and it was error to admit this testimony. However, since the jury learned through other means that Floyd had been in jail for burglary, the reference to jail-time was harmless, and any inference of flight could only have had a deminimis effect on the jury. We conclude on this record that the error does not warrant reversal under the standard of harmless error established by State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986).
On the second occasion, Thomas Snell testified on direct examination that Floyd previously had not been in any kind of trouble. On cross-examination, the prosecutor asked Snell if he knew that Floyd had committed five burglaries. The trial court overruled defense counsel's objection, finding that counsel "opened the door" to this inquiry during direct examination. Snell responded that he was not aware of those offenses, but they would not change his opinion of Floyd. The court then admitted documents pertaining to the five burglaries supporting the assertion implied in the prosecutor's question.
Floyd does not argue that Snell could not have been impeached by confronting him with the burglaries. He argues, instead, that the prosecutor misled the jury when he introduced the documents evincing the crimes because Floyd was adjudicated guilty of only two of the offenses. In the remaining three cases, adjudication was withheld. There is no question that Floyd tendered guilty pleas to all five of those offenses. The question posed to Snell and the evidence of the guilty pleas were appropriate because direct examination opened the door to the question of whether Floyd previously had been in trouble. Under these circumstances, we find no error.
Next, Floyd contends that several of the state's nonexpert witnesses gave improper opinion testimony. Specifically, Officer Olsen stated that a Kleenex box lying on the bedroom floor where Anderson's body was found "appeared to have been knocked off the dresser," that a tablecloth found lying on the bed "appeared like someone had taken some type of object that had blood on it and wiped it on there and left it on the bed," and that a laceration on her nose "appeared like she was probably smacked in the face." In addition, Sergeant Gavin described the bruise and injury to Anderson's nose as a wound "that would have been consistent with being struck with the glasses on [and] ... was indicative ... of a fight or a struggle." Finally, Detective Engelke testified that the murder was committed by a "creep-in burglar."
Generally, a lay witness may not testify in terms of an inference or *1232 opinion, because it usurps the function of the jury. C. Ehrhardt, Florida Evidence § 701.1, at 386 (2d ed. 1984). The jury's function is to determine the credibility and weight of such testimony. Jones v. State, 440 So.2d 570, 574 (Fla. 1983); McGough v. State, 302 So.2d 751, 755 (Fla. 1974). However, a lay witness may testify using an inference or opinion under limited circumstances:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.
§ 90.701(1), (2), Fla. Stat. (1983). Lay witness opinion testimony is admissible if it is within the ken of an intelligent person with a degree of experience. Peacock v. State, 160 So.2d 541, 542-43 (Fla. 1st DCA 1964) (visual comparison of casts of tire prints from victim's property with tires of defendant's car was one upon which deputy sheriff was qualified to testify under facts presented, leaving to the jury the determination of credibility and weight to be given to that testimony), cert. denied, 168 So.2d 148 (Fla.), cert. denied, 381 U.S. 916, 85 S.Ct. 1541, 14 L.Ed.2d 436 (1965). We find the officers' testimony within the permissible range of lay observation and ordinary police experience. Hence, the trial court did not abuse its discretion in admitting this particular testimony.
Floyd next contends that there was insufficient evidence to support the trial court's finding that the murder was committed for pecuniary gain and was heinous, atrocious, or cruel. To support the contention that this murder was heinous, atrocious, or cruel, the state presented the medical examiner's testimony describing the twelve stab wounds Anderson received to the abdomen, the chest, and to her left wrist. Although the medical examiner could not establish the sequence of those wounds, the wound to the chest was fatal "within a matter of minutes at the most," whereas the other wounds to her abdomen were "potentially fatal, [from which she] would take a longer time to die." The jury also heard that Anderson received a bruise to her nose that was consistent with a fight or struggle. There was no objection to any of this testimony.
Over Floyd's objection, however, police officers were permitted to testify that all of Anderson's injuries appeared to have occurred at the same time, and they opined that the wound to the top of Anderson's hand was a defensive wound. Floyd argues that the police officers should not have been permitted to testify to medical matters. We agree that the officers here were not qualified to give such testimony. The opinions expressed by them called for "special knowledge, skill, experience, or training," section 90.701(2), Florida Statutes, which required the state to establish the expertise of the witnesses before the trial court could admit their opinion testimony. See, e.g., Hansbrough v. State, 509 So.2d 1081, 1086 (Fla. 1987) (allowing medical examiner to testify that several of the victim's thirty-some stab wounds were defensive).
Although we conclude that there was error on this point, we determine that it was harmless in light of the medical examiner's testimony. DiGuilio, 491 So.2d at 1135. Independent of the police officers' improper testimony, the state produced sufficient evidence to adequately establish the existence of the aggravating circumstance of heinous, atrocious, or cruel beyond a reasonable doubt. Johnston v. State, 497 So.2d 863, 871 (Fla. 1986).
We also find adequate evidence to establish that the murder was committed for pecuniary gain. Floyd cashed a $500 check on Anderson's account within hours of the murder. Two days later, Floyd attempted to cash another check and was arrested with Anderson's checkbook in his possession. Moreover, inmate Anderson testified that Floyd admitted to breaking into a woman's home and "ripping her off."
*1233 In his next claim, Floyd contends that the trial court improperly prohibited counsel from apprising the jury of the nine statutory aggravating circumstances during closing argument, limiting counsel's argument to the two circumstances determined to apply. We have previously ruled against Floyd's position on this issue. Stewart v. State, 549 So.2d 171, 174 (Fla. 1978) ("The trial court properly rejected Stewart's confusing request that the jury be instructed on all possible aggravating factors so that he could argue that the absence of many of these factors was a reason for imposing a lesser sentence."), cert. denied, ___ U.S. ___, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990).
Finally, Floyd contends that the trial court misapprehended its role in considering the mitigating circumstances because, after finding two aggravating circumstances and no mitigating circumstances, the court stated: "I cannot ignore that score."
The trial court's statement, taken on its own, seems to ignore principles that we have repeated since State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). That is, the sentencing scheme requires more than a mere counting of aggravating and mitigating circumstances. E.g., Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990). It requires the trial court to make "a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present." Dixon, 283 So.2d at 10. The trial court may not simply tabulate the aggravating and mitigating circumstances, but must weigh those circumstances in imposing the appropriate sentence. Herring v. State, 446 So.2d 1049, 1957 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984).
Our review of the sentencing order in its totality convinces us, however, that the trial court correctly understood its role and effectively weighed the aggravating and mitigating circumstances. The order specifically addresses each statutory mitigating circumstance. The order then addresses the nonstatutory mitigating circumstances, and states, in part: "... this Court heard everything at the sentencing hearing that the Defendant chose to present. This Court now finds that sufficient mitigating circumstances which would require a lesser penalty do not exist." (Emphasis in original.) We are persuaded by the totality of the sentencing order that the trial court considered all the evidence submitted and appropriately weighed it.
After reviewing the record as well as considering any cumulative effect of the trial court's errors, we conclude that the sentence of death must be affirmed.
It is so ordered.
SHAW, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion, in which BARKETT, J., concurs.
McDONALD, Justice, dissenting.
I would not affirm the death sentence in this case. Floyd was surprised by the victim when he was burglarizing her home. Being scared, and with little or no thought, he killed her with a knife. Although he had been involved in other crimes, he had no record of violence. This homicide, though loathsome, does not place it in the category of "the most aggravated and least mitigated" for which the death penalty is appropriate. The sentence should be reduced to life imprisonment without eligibility for parole for twenty-five years.
BARKETT, J., concurs.
NOTES
[1] We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
[2] The murder was committed for pecuniary gain, section 921.141(5)(f), Florida Statutes (1983), and the murder was especially heinous, atrocious, or cruel. Id. § 921.141(5)(h).
[3] There had been one other black juror properly excused for cause.
[4] It is unclear from the record whether Floyd's counsel satisfied the threshold for asserting a claim under State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986). Assuming that Floyd satisfied the Neil threshold, we address the requirements for preserving a Neil claim for appeal.