583 So.2d 732 (1991)
Shawn C. KILLINGS, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1049.
District Court of Appeal of Florida, First District.
July 23, 1991.
Barbara Ann Butler, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn J. Mosley, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Appellant, Shawn C. Killings, raises two issues on appeal from his conviction for sale of cocaine: improper comments made by the prosecutor and insufficiency of the evidence. We affirm both issues; however, some comment is required as to the prosecutorial misconduct issue.
During opening statement, the prosecutor made the following statements:
[Y]ou all know what a problem cocaine is in our society today.
[T]he harm is that these people are out there, people are using cocaine, destroying families, destroying lives, and the police are using every measure within their power and within the law to root out and try to stop this problem.
Well, in an attempt to make a dent into the cocaine problem that we have in Bay County the police use undercover operatives... . And that's how we root out drug dealers. That's how we root out the people that are involved in the drug traffic.
[Dexter Culver] [w]as sent into the area of the Safari Lounge, which Jimmy Stanford, I believe, will testify to you that that is a high traffic drug area. In other words, there's a lot of drug activity in that area. Dexter Culver was sent into that area to see if he could find someone who was willing to sell him drugs, specifically cocaine.
* * * * * *
Crack cocaine is sold in small amounts. That's one of the problems we have. It's cheap. It's easily accessible... .
Then during closing, the prosecutor made the following remarks:
But that crack cocaine rock came from cocaine which was grown in a foreign country, which it's illegal to grow in a foreign country, which was brought into *733 the United States illegally. There's a great network of cocaine traffic that it takes to get down, to water down, to trickle down  trickle down economic's theory. The big money is on the top and it trickles down to little guys like Shawn Killings selling for 10 bucks. And the people that are using cocaine are getting it from the little guys like Shawn Killings, who are supporting the next level, who are supporting the next level, who are supporting the governments in Col[o]mbia and other countries where there's corruption where cocaine is grown illegally.
It's a problem... . But, Ladies and Gentlemen, this is the root of the drug problem we've got in America and Bay County. It's little crack cocaine rocks. It's people taking thos[e] crack cocaine rocks and putting them in their pipes and smoking and getting high and stealing and on the job high on cocaine, it's a little rock like this that it takes to get someone high on crack cocaine.
And it's a dime pill they call it. Selling them in $10 increments. It's the cheapest drug that you can get on the market right now and people like Shawn Killings are out there and they need to be punished for selling it.
By making such comments, the prosecutor was essentially waging war against the Colombian drug lords through his prosecution of appellant. These kinds of guilt-by-association trial tactics are clearly improper; however, because no objection or motion for mistrial was made, the error was not preserved for appellate review. Holton v. State, 573 So.2d 284 (Fla. 1991), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); Clark v. State, 363 So.2d 331 (Fla. 1978), receded from on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); State v. Jones, 204 So.2d 515 (Fla. 1967); Jones v. State, 571 So.2d 1374 (Fla. 1st DCA 1990). Moreover, the comments do not rise to the level of fundamental error, that is, error that goes to the foundation of the case and the merits of the cause of action. Clark, 363 So.2d at 333.
We caution, however, that in affirming we do not condone such comments, and that there are other means available by which to discipline attorneys responsible for such intemperate and inflammatory statements. See Fla.R.Prof.Conduct 4-3.4.
AFFIRMED.
ZEHMER, J., concurs.
MINER, J., concurs with written opinion.
MINER, Judge, concurring.
I fully concur in the holding and the views expressed in Judge Ervin's opinion and write briefly only to express one former criminal trial judge's view that inappropriate and intemperate prosecutorial comments of the type expressed here stretch the harmless error rule almost to the snapping point. To restate the admonition of the Florida Supreme Curt in Hill v. State, 477 So.2d 553 (Fla. 1985) and this court in Bass v. State, 547 So.2d 680 (Fla. 1st DCA 1989), I suggest that such prosecutorial excess, if not curbed, can only serve to "fuel the flame of those who advocate the adoption of a per se rule of reversal for such misconduct." Hill at 557; Bass at 683.
I trust and fully expect that Florida's prosecutors are too intelligent and disciplined a lot to require a lick between their collective eyes by such a two by four to get their attention as did the proverbial mule of jokelore.