666 So.2d 1008 (1996)
Sidney Tyrone RATLIFF, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2644.
District Court of Appeal of Florida, First District.
January 23, 1996.
*1010 James T. Miller of Corse, Bell & Miller, P.A., Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General; Patrick Martin, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, Judge.
Convicted of burglary with assault, Sidney Tyrone Ratliff seeks reversal on grounds the trial court erred in allowing a peremptory challenge to an African-American juror designate, and in accepting as racially neutral the reasons the prosecutor advanced for the challenge. While we agree that some of the reasons offered bore no relationship to the prospective juror's ability to sit, we find no evidence of racial bias. We also reject appellant's contention that the trial court erred in excluding certain testimony from trial as irrelevant (a contention we do not believe merits further discussion), certify a question concerning the proper procedure when a litigant objects that an opposing party seeks to exercise a peremptory challenge for constitutionally impermissible reasons, and affirm.

Peremptory Challenge
During voir dire, the prosecutor sought to exercise a peremptory challenge against David Flowers, who like Mr. Ratliff is African-American.[1] Defense counsel promptly "ask[ed] the court to do a Neil inquiry."[2] Called upon to state reasons for the peremptory challenge to Mr. Flowers, the prosecutor responded: "Judge, Mr. Flowers appears to be a single male in his forties with no children. He also needed help, trouble reading through the factual background history."
Defense counsel did not respond by questioning the legitimacy[3] or accuracy of any reason articulated by the state for its challenge to Mr. Flowers. The trial court ruled: "I find the reasons given by both state and defense[[4]] are racially neutral reasons and ... I deny your challenge [to the prosecutor's right to exercise the peremptory challenge]." The record does not reveal the race of the juror who sat in Mr. Flowers' stead.
Before the jury from which Mr. Flowers was excluded was sworn and before other members of the venire had been dismissed, defense counsel accepted the jury panel "subject to [our] previously stated objections." "[A]ccepting a jury subject to an earlier Neil *1011 objection is sufficient to preserve the issue of alleged racial bias in the exercise of peremptory challenges." Suggs v. State, 620 So.2d 1231, 1232 (Fla. 1993); Mitchell v. State, 620 So.2d 1008 (Fla. 1993). See Joiner v. State, 618 So.2d 174 (Fla. 1993).
On appeal, Mr. Ratliff contends that the trial court erred in allowing the peremptory challenge, arguing that the reasons the state advanced for the challenge  identified in appellant's brief as Mr. Flowers' age, marital status, lack of children, and purported difficulty in reading the juror questionnaire  had no bearing on the facts of the case, that there was no record basis for the assertion that Mr. Flowers had difficulty reading,[5] and that the trial court accepted the proffered reasons without critical evaluation.

Inquiry Necessary
Unless there are "race-neutral reasons for excusal ... already on the record," Taylor v. State, 638 So.2d 30, 33 (Fla.), cert. denied, ___ U.S. ___, 115 S.Ct. 518, 130 L.Ed.2d. 424 (1994), a trial court must make inquiry if a party objects on grounds that even a single peremptory challenge is racially motivated. State v. Johans, 613 So.2d 1319 (Fla. 1993); Reynolds v. State, 576 So.2d 1300 (Fla. 1991). That is what happened here. "[U]nless a court can cite specific circumstances in the record that eliminate all question of discrimination, it must conduct an inquiry." Valentine v. State, 616 So.2d 971, 974 (Fla. 1993). In Florida courts, defense counsel as well as prosecutors may be called upon to justify peremptory challenges, State v. Aldret, 606 So.2d 1156 (Fla. 1992), and the issue may also arise in civil cases. Hall v. Daee, 602 So.2d 512 (Fla. 1992).
Reviewing courts "must rely on the superior vantage point of the trial judge, who is present, can consider the demeanor of those involved, and can get a feel for what is going on in the jury selection process." Files v. State, 613 So.2d 1301, 1305 (Fla. 1992). Whether the prosecutor is discriminating on the basis of race is a question of fact, one which the trial court has primary responsibility to resolve.
Part of the trial judge's role is to evaluate both the credibility of the person offering the explanation as well as the credibility of the asserted reasons. These must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record.
State v. Slappy, 522 So.2d 18, 22 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). "While these issues encompass more than `basic, primary or historical facts,' their resolution depends heavily on the trial court's appraisal of ... credibility *1012 and demeanor." Thompson v. Keohane, ___ U.S. ___, ___, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). Unless clearly erroneous, the trial court's findings concerning discriminatory intent will be upheld.

Florida Procedures
The Florida Supreme Court laid down procedures initially to protect the right of the accused under the Florida Constitution to an impartial jury. State v. Neil, 457 So.2d 481 (Fla. 1984). See Kibler v. State, 546 So.2d 710, 712 (Fla. 1989) (declaring Neil "unmistakably based" on the Florida Constitution). Antedating Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the decision in Neil put the burden of proof on the proponent of a peremptory challenge  the party denying racial discrimination  "to show that the questioned challenges were not exercised solely because of the prospective jurors' race," 457 So.2d at 486-87, but only if the questioning party first showed "a substantial likelihood" that the challenge sprang from racial prejudice.
By the time the court decided Slappy, Florida case law required no inquiry or evaluation until and unless the party questioning the challenge proved a substantial likelihood that racial discrimination was the reason for the questioned challenge, but the decision in Batson had come down. The Slappy court said:
Once a trial judge is satisfied that the complaining party's objection was proper and not frivolous, the burden of proof shifts. At this juncture, Neil imposes upon the other party an obligation to rebut the inference created when the defense met its initial burden of persuasion. This rebuttal must consist of a "clear and reasonably specific" racially neutral explanation of "legitimate reasons" for the state's use of its peremptory challenges. Batson, 476 U.S. at 96-98 & n. 20, 106 S.Ct. at 1722-24 & n. 20. While the reasons need not rise to the level justifying a challenge for cause, they nevertheless must consist of more than the assumption
that [the veniremen] would be partial to the defendant because of their shared race... . Nor may the [party exercising the challenge] rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." ... If these general assertions were accepted as rebutting a ... prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." Id. at 97-98, 106 S.Ct. at 1723, (quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972), and Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 584, 79 L.Ed. 1074 (1935)).
Slappy, 522 So.2d at 22 (emphasis added). The court has since reiterated that a "Neil inquiry requires the person exercising the questioned peremptories to show that the challenges were not exercised solely on the basis of the prospective juror's race." State v. Alen, 616 So.2d 452, 453 (Fla. 1993) (emphasis added).

Batson v. Kentucky
In Batson, the Court spelled out different procedures for vindication of prospective jurors' federal rights to equal protection of the laws. See Purkett v. Elem, ___ U.S. ___, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) ("the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike"); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson. Shifting the burden of proof in the manner set out in Slappy is inconsistent with the procedure prescribed in Batson. Confusion arises because the Slappy opinion cites Batson with apparent approval, seemingly with the intention to adopt the federal procedure for the protection of state constitutional rights, as well. Certainly a unified procedure has practical advantages.
In the employment context,[6] Florida courts have long been familiar with the procedure *1013 the federal supreme court adopted in Batson for deciding whether particular prosecutorial peremptory challenges effect invidious discrimination:
In Batson, we outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause... . First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Id., at 96-97, 106 S.Ct., at 1722-1723. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Id., at 97-98, 106 S.Ct., at 1723-1724. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Id., at 98, 106 S.Ct., at 1723.
Hernandez, 500 U.S. at 358-59, 111 S.Ct. at 1865-66 (emphasis added). Upon a prima facie showing that racial prejudice motivates peremptory challenges, the party exercising the questioned peremptory challenges has an "obligation to advance a facially race-neutral reason that is supported in the record." Floyd v. State, 569 So.2d 1225, 1229 (Fla. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); Williams v. State, 574 So.2d 136, 137 (Fla. 1991). But see, e.g., State v. Fox, 587 So.2d 464 (Fla. 1991). The requirement to advance such a reason[7] does not, however, under Batson, entail any shifting of the burden of proof.
Once the prosecutor offers a racially neutral basis for his exercise of peremptory challenges, "[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination," Batson, 476 U.S. at 98, 106 S.Ct. at 1724, assuming evidence of discrimination has been *1014 adduced. Under Batson, only if there is evidence[8] that the reasons advanced are pretextual is the critical evaluation about which Slappy and other cases teach necessary. Only then, under the federal cases, is it "not sufficient that the state's explanations for its peremptory challenges are facially race neutral [so that t]he state's explanations must be critically evaluated by the trial court to assure they are not pretexts for racial discrimination." Roundtree v. State, 546 So.2d 1042, 1045 (Fla. 1989). "It is not until the third step that the persuasiveness of the justification becomes relevant  the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 106 S.Ct., at 1723; Hernandez, supra, at 359, 111 S.Ct., at 1865 (plurality opinion)." Purkett, ___ U.S. at ___, 115 S.Ct. at 1771 (emphasis added).
In describing shifting burdens of proof, Slappy proceeded on the assumption that the initial presumption of nondiscrimination had already been overcome. Since the decision in Slappy, however, in order to lay down "a procedure that gives clear and certain guidance to the trial courts in dealing with peremptory challenges," Johans, 613 So.2d at 1321, our supreme court has held that "a Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner." Id. Moving straight to the inquiry streamlines the procedure.
Dispensing with the initial requirement of a prima facie showing of racial discrimination, the Florida cases sanction a procedure which resembles what in fact transpired in the Hernandez case:
The prosecutor defended his use of peremptory strikes without any prompting or inquiry from the trial court. As a result, the trial court had no occasion to rule that petitioner had or had not made a prima facie showing of intentional discrimination. This departure from the normal course of proceeding need not concern us. We explained in the context of employment discrimination litigation under Title VII of the Civil Rights Act of 1964 that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). The same principle applies under Batson. Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.
Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866. Beginning with step two moves the trial forward more expeditiously. The lack of a requirement to make a prima facie showing before making inquiry does not render the Florida procedure incompatible with the federal procedure.
But, now that our supreme court has done away with any prerequisite  beyond timely objection alleging discrimination against a protected class  for an inquiry into the challenger's motives, it may be time to reconsider *1015 whether the party exercising the challenge should continue to bear the burden of proof (at least for state constitutional purposes) on the question of discriminatory intent  as opposed to shouldering only the lesser burden to articulate "a `clear and reasonably specific' explanation of his `legitimate reasons' for exercising the challenges." Batson, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)).
On one hand, the need for a prima facie showing as a prerequisite to inquiry has been eliminated and Slappy places the burden of proof on the party exercising the challenge. On the other, our supreme court recently "reiterate[d] ... what w[as] stated specifically in [State v.] Neil [, 457 So.2d 481 (Fla. 1984)]: there is an initial presumption that peremptories will be exercised in a nondiscriminatory manner." Windom v. State, 656 So.2d 432, 437 (Fla. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995). This presumption implies that the party questioning a peremptory challenge has a burden of proof of some kind, despite language to the contrary in some of the cases. Accordingly, we certify the following as a question of great public interest:
WHEN A LITIGANT OBJECTS THAT AN OPPOSING PARTY SEEKS TO EXERCISE A PEREMPTORY CHALLENGE FOR CONSTITUTIONALLY IMPERMISSIBLE REASONS, WHO HAS THE BURDEN TO PROVE (OR DISPROVE) FACTS ON WHICH THE OBJECTOR RELIES?
Here appellant made neither a preliminary nor any other showing that racial prejudice contributed in any way to the only peremptory challenge he questioned on grounds of racial discrimination. That the challenge to Mr. Flowers was allowed affords no basis for overturning appellant's conviction, since nothing in the record supports appellant's contention that Mr. Flowers was excluded from the jury on account of his race.
Affirmed.
ERVIN and VAN NORTWICK, JJ., concur.
NOTES
[1] Mr. Ratliff's race is immaterial to our analysis. See J.E.B. v. Alabama, ___ U.S. ___, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); Barwick v. State, 547 So.2d 612 (Fla. 1989); Kibler v. State, 546 So.2d 710 (Fla. 1989). That the victim was also African-American is likewise immaterial.
[2] In State v. Neil, 457 So.2d 481, 486 (Fla. 1984), the supreme court interpreted Article I, Section 16 of the Florida Constitution ("the accused ... shall have the right to ... trial by impartial jury") to require judicial inquiry into the reasons motivating peremptory challenges whenever there was "a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race." On finding such a likelihood, the court held, "the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race." Id. at 486-87.
[3] Gender, by itself, is not a legitimate reason for a peremptory challenge. J.E.B.; Abshire v. State, 642 So.2d 542 (Fla. 1994). But appellant makes no contention that Mr. Flowers was wrongfully excluded on account of his gender. In the trial court, Mr. Ratliff never stated any objection to the striking of Mr. Flowers on the basis of his gender. We do not, therefore, reach any question concerning Mr. Flowers' gender.
[4] The defense offered no evidence on the propriety of the prosecution's challenges. The trial court required defense counsel to give reasons for each peremptory challenge the defense had exercised, even though the prosecutor had not questioned any of the defense challenges. We are aware of no authority for inquiring of a party as to the basis for an unquestioned peremptory challenge.
[5] Defense counsel did not attempt to alert the trial court to any factual dispute about Mr. Flowers' reading ability. The present case is, therefore, distinguishable from Givens v. State, 619 So.2d 500, 501 (Fla. 1st DCA 1993), where "defense counsel's response was sufficient to put the trial judge on notice that the state's [purported] basis for exercising its peremptory challenges upon certain jurors, and its explanations thereof, were being questioned." There defense counsel, whose "apparent attempt to challenge the state's reasons was abruptly cut off by the trial judge's remark, `I have ruled on it,'" id., "took an exception to that ruling." Id.

The record does not reflect the "trouble reading" Mr. Flowers supposedly experienced. But "when the state asserts a fact as existing in the record, the trial court cannot be faulted for assuming it is so when defense counsel is silent and the assertion remains unchallenged." Floyd v. State, 569 So.2d 1225, 1229 (Fla. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). State v. Fox, 587 So.2d 464, 464-65 (Fla. 1991).
In Bowden v. State, 588 So.2d 225 (Fla. 1991), cert. denied, 503 U.S. 975, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992), too, our supreme court found that a factual issue had not been preserved for review:
Although the fact that a juror has a relative who has been charged with a crime is a race-neutral reason for excusing that juror, Bowden complains that this reason is not supported by the record. The state counters that the information concerning the juror's relative was gleaned from the jury questionnaire. We are unable to determine whether such information was contained in the questionnaire because the jury questionnaires were not made a part of the record. However we find that, because defense counsel failed to object to the reasons given for the excusal, the Neil issue has been waived.
Bowden, 588 So.2d at 229. Under Bowden, Fox, and Floyd, when the trial court relies on an uncontested factual predicate, an appeals court cannot make a de novo determination that the predicate is factually inaccurate.
[6] Where racial discrimination in employment is alleged, it is incumbent on the plaintiff or petitioner  the party claiming racial discrimination  to establish a prima facie case. Failure to establish a prima facie case of race discrimination ends the inquiry. Arnold v. Burger Queen Systems, 509 So.2d 958 (Fla. 2d DCA 1987). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). But the mere articulation of a racially neutral, legitimate reason for the employer's action dispels the presumption.

With respect to discharge, nonhire, and the like, the defendant or respondent need only articulate a legitimate, nondiscriminatory reason for the termination or other action, in order to place upon the plaintiff or petitioner the burden of going forward with proof that the asserted reason is pretextual. National Indus., Inc. v. Commission on Human Relations, 527 So.2d 894 (Fla. 5th DCA 1988). Like plaintiffs in Title VII actions, petitioners for relief under Florida's Human Relations Act bear the burden of persuasion at all times on the ultimate fact of discrimination. See Department of Corrections v. Chandler, 582 So.2d 1183 (Fla. 1st DCA 1991).
Pursuant to the Burdine formula, the employee has the initial burden of establishing a prima facie case of intentional discrimination, which once established raises a presumption that the employer discriminated against the employee. If the presumption arises, the burden shifts to the employer to present sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee. The employer may do this by stating a legitimate, nondiscriminatory reason for the employment decision; a reason which is clear, reasonably specific, and worthy of credence. Because the employer has the burden of production, not one of persuasion, which remains with the employee, it is not required to persuade the trier of fact that its decision was actually motivated by the reason given. If the employer satisfies its burden, the employee must then persuade the fact finder that the proffered reason for the employment decision was a pretext for intentional discrimination. The employee may satisfy this burden by showing directly that a discriminatory reason more likely than not motivated the decision, or indirectly by showing that the proffered reason for the employment decision is not worthy of belief. If such proof is adequately presented, the employee satisfies his or her ultimate burden of demonstrating by a preponderance of evidence that he or she has been the victim of intentional discrimination.
Chandler, 582 So.2d at 1186. Ever since the decision in School Board of Leon County v. Hargis, 400 So.2d 103 (Fla. 1st DCA 1981), federal cases have been looked to for guidance in this area. See Anderson v. Lykes Pasco Packing Co., 503 So.2d 1269 (Fla. 2d DCA 1986). Claims of intentional race discrimination in the employment context are treated within the procedural framework set out in Burdine and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[7] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.
Hernandez, 500 U.S. at 360, 111 S.Ct. at 1866.
[8] The trial court must decide whether reasons offered for the challenges are pretextual when the evidence (whether adduced before or after the inquiry) makes out a prima facie showing. See United States v. Bergodere, 40 F.3d 512, 516 (1st Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995); United States v. Vasquez-Lopez, 22 F.3d 900, 901 (9th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994); United States v. Branch, 989 F.2d 752, 755 (5th Cir.), cert. denied sub nom. Thompson v. U.S., ___ U.S. ___, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); United States v. Casper, 956 F.2d 416, 418 (3d Cir.1992); United States v. Moore, 895 F.2d 484, 485 (8th Cir.1990); United States v. Grandison, 885 F.2d 143, 146 (4th Cir.1989), cert. denied, 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990). See generally United States v. Krout, 66 F.3d 1420, 1428 (5th Cir.1995) (seven of eleven jurors stricken peremptorily were Hispanic); Cochran v. Herring, 43 F.3d 1404, 1410-12 (11th Cir.) (seven of fourteen peremptory challenges used to strike seven of nine blacks on forty-two-member venire), modified on reh'g., 61 F.3d 20 (11th Cir.1995); United States v. Cooper, 19 F.3d 1154, 1159 (7th Cir.1994) (four of five peremptory challenges directed to blacks).