905 So.2d 905 (2005)
Joseph Henry DAVIS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D96-2911.
District Court of Appeal of Florida, Third District.
April 13, 2005.
Rehearing Denied July 27, 2005.
*906 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before GERSTEN, FLETCHER and SUAREZ, JJ.
SUAREZ, J.
The defendant appeals his convictions and sentences for first-degree murder, armed burglary with an assault, unlawful possession of a firearm while engaged in a criminal offense and stalking. Defendant contends in this appeal that the trial court committed a Batson[1] violation and requests this Court reverse the convictions and sentences. We find no Batson violation and, therefore, affirm the convictions and sentences.
This case has a unique and lengthy appellate past. The defendant's initial direct appeal, taken in 1996, argued that the State's peremptory challenge of potential juror Swift, an African-American, was improperly permitted over his Neil[2] objection. In its decision, this Court stated that although the defendant's argument was well taken, the issue was not properly preserved for appeal as the defendant had failed to renew his objection prior to the jury being seated as required by Joiner v. State, 618 So.2d 174 (Fla.1993). See Davis v. State, 710 So.2d 723 (Fla. 3d DCA 1998).
The defendant next filed, in the trial court, a pro se motion for post conviction relief under Fla. R.Crim. P. 3.850. This court affirmed the trial court's denial of that motion. See Davis v. State, 763 So.2d 332 (Fla. 3d DCA 2000). The defendant next filed a Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Florida claiming ineffective assistance of counsel for failing to preserve his objection to the State's use of a peremptory challenge against prospective juror Swift. The District *907 Court denied the petition and defendant appealed to the Eleventh Circuit Court of Appeals. See Davis v. Secretary for Dep't of Corrections, 341 F.3d 1310 (11th Cir.2003). The Court of Appeals held that defense counsel's failure to renew the Batson challenge before accepting the jury was ineffective assistance and found "that the District Court should grant Davis a writ of habeas corpus based on the State's provision of either a new trial or an opportunity to take an out-of-time appeal wherein his freestanding Batson challenge could be decided by the state courts on the merits." Davis, 341 F.3d at 1317. The out-of-time appeal is presently before us.
The pertinent facts which give rise to this appeal occurred during voir dire and concern the questioning of two potential jurors, Harvell and Swift, both of whom are African-American. Harvell was questioned as follows by the prosecutor:
MS. HOAGUE: Let's say you got yourself in a situation with a first degree murder, where the judge explained to you the law on premeditation.
Let's say that, just for argument's sake, the law on premeditation is that all you have to have is a conscious decision to kill in your mind before you do the killing, and that the law fixes no time limit for that to occur.
You could form it within a matter of seconds, or it could be hours or years.
There is no set time limit.
First of all, what do you think about that definition?
MR. HARVELL: I don't know.
I think it's alright.
MS. HOAGUE: You think it's alright?
MR. HARVELL: I think it could be wrong.
MS. HOAGUE: In what way could it be wrong?
MR. HARVELL: It could be right and it could be wrong.
It all depends how you look at it.
MS. HOAGUE: Let's just say, for argument's sake, that you heard that definition from the court and you said: I don't agree with that. I think the law should be that a person has to plan, for a long, long time, for at least days, to kill somebody. I just don't think the law is right; that you could do it within a matter of minutes or seconds. I just don't think it's right.
Which would you follow, sir; what the judge tells you or what your gut feeling tells you is right, even if it's against what the judge says to you?
MR. HARVELL: I think I would follow my gut feeling.
MS. HOAGUE: I think that about you.
I mean, I'm telling you right now that I'm thinking, while looking at you, that you are not a person who will do something that you don't want to do if you don't think it's right; am I correct?
MR. HARVELL: That's right.
MS. HOAGUE: Thank you.
When juror Swift was questioned, he gave a different response indicating he would be able to set his feelings aside and follow the law:
MS. HOAGUE: The fact that it's a homicide case, does that make it a situation where it would be hard to set your feelings aside?
* * *
MR. SWIFT?
MR. SWIFT: I would follow the law.
At the conclusion of the voir dire, the trial judge asked the following questions:
THE COURT: I'm going to come back to Mr. Harvell and Mr. Swift just one more time. This is not like a quiz where *908 you have to answer right. We just want to know how you feel.
If I instruct you on the law as to the conditions that are required, can you follow that law even though you might not agree that's the way it should be, Mr. Swift?
MR. SWIFT: I can follow it.
THE COURT: Mr. Harvell?
MR. HARVELL: I can follow it, sir.
The State first moved to strike juror Harvell peremptorily. The defense requested a race-neutral reason, which was followed by the State's responseHarvell's inability to follow the law. The trial judge allowed the strike. When it came time for juror Swift, the State moved to strike him for the "same reason" as juror Harvell. The defense objected on grounds that the strike was being exercised in a discriminatory manner. The trial court allowed the strike stating that Swift also indicated he could not follow the law and would follow his gut feeling:
THE COURT: Swift, defense?
MR. MECKE: Accept.
THE COURT: State?
MS. HOAGUE: Strike.
We strike him for the exact same reason, your honor.
MR. MECKE: I would raise the same challenge and objection.
We don't have a single black juror on here. Once again, I'm objecting that it's being exercised in a discriminatory manner, a racially discriminatory manner.
THE COURT: Well, I think Mr. Swift is also the only one who felt that he could not follow the law that he was going to be instructed upon, and he would follow his gut feeling.
I went back and asked him, and he said he could, and while I think that would prevent the State from making a cause challenge, it certainly permits a racially-neutral reason for a peremptory challenge, and I will allow it.
Neither defense nor State corrected the Judge's confusion that Swift had never indicated during the voir dire that he would not follow the law. In fact, the record shows that Swift's only response was that he would follow the law. We find no Batson violation based on the particular facts of this case.
This Court's decision is controlled by the factually similar case of Floyd v. State, 569 So.2d 1225 (Fla.1990). In Floyd, as in the case at bar, the State moved to peremptorily strike an African-American juror. In Floyd, as in the case at bar, the defense requested a race-neutral explanation. In Floyd, as in the case at bar, the State offered what could be a race-neutral explanation based upon a voir dire answer allegedly given by the potential juror. In Floyd, as in the case at bar, the court struck the juror based upon the State's race-neutral explanation. In Floyd, as in the case at bar, the record showed that, in fact, the potential juror had not made the statement attributed to the juror by the State which formed the basis of the race-neutral explanation. In Floyd, as in the case at bar, neither the defense nor the State requested a review of the record to establish record support for the race-neutral explanation advanced by the State. In Floyd, the Florida Supreme Court found the trial court had not erred in allowing the strike. The Court stated that had defense counsel disputed the State's statement, the trial court would have then been required to review the record to establish the record support claimed by the State. As the defense failed to do so, the trial court cannot be found to have erred based upon its mistaken belief that the record did, in fact, support the State's race-neutral explanation.
*909 In this action, as in Floyd, the defense timely objected to the State's peremptory strike but failed to point out to the Court that the race-neutral explanation given by the State could not be found in the record, as the statement was never made. As the trial court was not put on notice that the record did not support the race-neutral explanation being given, it cannot be said that the trial court erred in allowing the peremptory challenge. For the above reasons, we find no Batson violation and affirm the convictions and sentences in this matter.
Affirmed.
NOTES
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[2] State v. Neil, 457 So.2d 481 (Fla.1984).