PARIENTE, J.
The issue in this case is whether a trial court can deny a party the right to exercise a peremptory strike against a juror where the record does not establish that the juror was a member of a protected *1109 class. The decision of the Third District Court of Appeal in Smith v. State, 1 So.3d 352 (Fla. 3d DCA 2009), is in express and direct conflict with our precedent in State v. Alen, 616 So.2d 452 (Fla.1993), which held that a juror’s surname, without more, is insufficient to trigger an inquiry as to whether the strike was exercised in a discriminatory manner.[1] The Third District’s opinion, which does not require that there be a threshold demonstration that the juror was a member of a protected class, has the potential to undermine the very purpose for the protections required to prevent invidious discrimination in jury selection. We quash the decision of the Third District because it is contrary to our precedent in Alen that a juror’s surname, without more, is insufficient to trigger an inquiry as to whether the strike was exercised for a discriminatory reason.
FACTS
During voir dire, each of the jurors answered a list of standard questions regarding their backgrounds. A potential juror, Earl Buchholz, Jr., identified himself as the chairman of a prestigious international tennis tournament held annually in Key Biscayne, Florida.
MR. BUCHHOLZ: My name is Earl Buchholz, Jr. I was born 9/16/1940. I reside in Unincorporated- Dade. I have lived here about 17 years. My occupation is I’m chairman of the NASDAQ 100 Open, which is a tennis tournament at Key Biscayne.
THE COURT: Isn’t your name Butch?
MR. BUCHHOLZ: Yes, hello. How are you doing?
My wife is a domestic engineer. I have three grown children. I have served on a jury before when I was living in St. Louis. It was a criminal charge and they settled the case, plea bargained.
I do not have any law enforcement people in my family. We have been robbed when we lived in Boca. Our house was robbed.
I have never been accused of a crime. And I have not been a witness.
THE COURT: Thank you.
During the parties’ exercise of challenges, defense counsel stated that he was peremptorily striking Mr. Buchholz, at which point the following exchange occurred:
MR. CASASNOVAS [defense counsel]: We are going to ask for a peremptory on Mr. Buchholz, No. 12.
MS. MATO [prosecutor]: Judge, I would—
THE COURT: Wait a minute. What about Buchholz? You are peremptorily challenging him?
MR. CASASNOVAS: Yes, sir.
THE COURT: Are you requiring an explanation?
MS. MATO: Yes, Judge.
MR. CASASNOVAS: Is he a member of a distinct minority group which would render him—
THE COURT: Buchholz?
MR. CASASNOVAS: Yes.
THE COURT: Sounds to me like a German name.
MR. CASASNOVAS: This is a recognized minority group within the law, I believe.[2] Mr. Buchholz—
*1110 THE COURT: I suppose there is— anybody qualifies under our present great, deeply thought out appellate decisions.
MR. CASASNOVAS: He is a victim of a house robbery which makes him a victim of a crime. And he can harbor bias or any difficulty in this case—
THE COURT: The Court will rule that is not a genuine objection and it is overruled.
MR. CASASNOVAS: We have several others.
THE COURT: Go ahead.
MR. CASASNOVAS: He served on a jury.
THE COURT: He served on a jury in Ohio.
MS. WRIGHT [co-defense counsel]: St. Louis.
MR. CASASNOVAS: In a criminal case.
MS. MATO: Those were the same reasons I requested that juror No. 8 be excused.
THE COURT: We are done with Juror No. 3.
MS. MATO: The reasons they said were not the same reasons they are saying for Juror No. 12 [Buchholz].
THE COURT: I don’t think that the objections to Buchholz are genuine. I’m going to overrule it.
MR. CASASNOVAS: That is over our respectful objection.
THE COURT: That’s correct.
(Emphasis added.)
On appeal, Smith raised only one issue: whether the trial court erred in denying defense counsel’s peremptory challenge of Buchholz. In reaching its decision, the Third District rejected the defendant’s claim that the State’s objection to the peremptory challenge was insufficient. The Third District first recognized that when a party objects to the use of a peremptory challenge, the opponent “must make a timely objection, identify the racial or ethnic class or gender of the juror being challenged, and request that the trial court ask the striking party to articulate its reason(s) for the strike.” Smith, 1 So.3d at 353. Any doubt as to whether this initial burden was met must be resolved in the objecting party’s favor. The Third District then held that if an objection is insufficient, a trial court is not required to make an inquiry as to the reason for the strike. Id. at 354. However, the “trial court may exercise its discretion to do so if it clearly understands the nature of the objection.” Id.
Relying on this Court’s opinion in Franqui v. State, 699 So.2d 1332, 1335 (Fla.1997), the Third District interpreted Franqui as drawing a distinction between “those cases in which reversal is being sought when the trial court failed to make a required inquiry and those in which an inquiry was made even though the objection levied did not require it to do so.” Smith, 1 So.3d at 354. In support, the Third District reasoned that
in Franqui, while the State’s objection was arguably insufficient to require the trial court to conduct a Neil [3] inquiry, *1111 the Florida Supreme Court affirmed Franqui’s convictions after concluding that the trial court did not abuse its discretion in requesting the defense to provide a race-neutral reason for its peremptory challenge of the juror since it was clear that the trial court understood that the objection was made on racial grounds.
Id. (emphasis omitted). The Third District rejected the premise that an inquiry cannot be made by the trial court unless the objecting party meets the first prong of Melbourne,[4] which requires the objecting party to “make a timely objection, identify the racial or ethnic class or gender of the juror being challenged, and request that the trial court ask the striking party to articulate its reason(s) for the strike.” Smith, 1 So.3d at 353. The Third District then concluded that “the trial court did not abuse its discretion in requesting the defense to provide a race-neutral reason for its peremptory challenge of prospective juror Buehholz.” Id. at 355. The Third District affirmed the trial court because the trial court found that the reasons proffered were not genuine and the record clearly supported the trial court’s finding.
ANALYSIS
The conflict issue is whether a juror’s surname, without more, is sufficient to trigger an inquiry into whether the peremptory strike was exercised in a discriminatory manner. As we explain below, the Third District’s decision directly conflicts with this Court’s decision in Alen, which held that a juror’s surname alone is insufficient to demonstrate ethnicity. The Third District’s opinion also mistakenly relied on and misapplied this Court’s decision in Franqui While Franqui recognized that no magic words were necessary to trigger an inquiry into whether a strike was exercised in a discriminatory manner, Franqui did not eliminate the necessity of establishing that the juror was a member of a cognizable class.
To answer this question, we discuss the law relative to peremptory challenges and then apply it in this case to determine if the trial court and the Third District prop-érly determined that an inquiry into the basis for the peremptory challenge was appropriate. For the reasons addressed in more depth below, we conclude that the inquiry was contrary to this Court’s well-established precedent.

Our Precedent Regarding Peremptorg Challenges

As recognized by this Court, “the very purpose of peremptory challenges is ‘the effectuation of the constitutional guaranty of trial by an impartial jury.’ Although peremptory challenges are not themselves constitutionally guaranteed at either the state or federal level, such challenges are nonetheless ‘one of the most important of the rights secured to the accused.’” Busby v. State, 894 So.2d 88, 98 (Fla.2004) (citations omitted); see also Alen, 616 So.2d at 453. These peremptory challenges, however, cannot be used in a discriminatory manner to exclude potential jurors based on race, ethnicity, or gender. Busby, 894 So.2d at 99.
Article I, section 16, of the Florida Constitution guarantees a defendant the right to an impartial jury. This Court has held that the exercise of a peremptory challenge solely on the basis of race violates the right to trial by an impartial jury under article I, section 16, of the Florida Constitution. See Neil, 457 So.2d at 486. The Court has explained the tension between the right to exercise peremptory challenges and the right to an impartial *1112 jury free of impermissible discrimination as follows:
Traditionally, a peremptory challenge permits dismissal of a juror based on no more than “sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.” 4 W. Blackstone, Commentaries 353 (1807). This ancient tradition, however, is to some degree inconsistent with the requirements of the Florida and federal constitutions. We thus cannot permit the peremptory’s use when it results in the exclusion of persons from jury service due to constitutionally impermissible prejudice. To the extent of the inconsistency, the constitutional principles must prevail, notwithstanding the traditionally unlimited scope of the peremptory.
State v. Slappy, 522 So.2d 18, 20 (Fla.1988), receded from on other grounds by Melbourne, 679 So.2d at 765. In other words, the very purpose of placing any limits on the free exercise of peremptory challenges was to prevent the exclusion of individuals from jury service due to discrimination. As further explained in Alen:
Although the peremptory challenge contributes significantly to the selection of a fair jury, it is also a tool that can be intentionally or unintentionally transformed into a disguise for discrimination against distinct groups of people. As we stated in Neil, “[i]t was not intended that such challenges be used solely as a scalpel to excise a distinct racial group from a representative cross-section of society.”
Alen, 616 So.2d at 453 (quoting Neil, 457 So.2d at 486).
Over the years, the procedure for determining whether impermissible prejudice occurred has evolved. The Court finally settled on the procedure set forth in Melbourne, 679 So.2d at 764. This Court set forth clear guidelines that if a party objects to the opposing party’s use-of a peremptory challenge on such grounds, the objecting party must:
a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court’s focus in step 3 is not on the. reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. (footnotes omitted) (emphasis added).
In Alen, after stressing that peremptory challenges cannot be used in a discriminatory manner to excuse a member of a cognizable class, this Court defined what constitutes a “cognizable class” that is entitled to protection under Neil. As this Court held:
First, the group’s population should be large enough that the general community recognizes it as an identifiable group in the community. Second, the group should be distinguished from the larger community by an internal cohesiveness of attitudes, ideas, or experiences that may not be adequately represented by other segments of society.
*1113 Alen, 616 So.2d at 454. Using these criteria, the Court held that Hispanics are a cognizable class in Florida. Id. at 455. Determining one’s membership in a cognizable class is a matter of fact, and a trial judge is granted discretion in making such a determination. Id. at 456. The Court provided the following guidance:
Although such salient characteristics as a person’s native language and surname may represent ethnic commonality, we do not believe that these types of characteristics, standing alone, sufficiently describe Hispanics as a cognizable class. For example, a person who is born in Cuba, becomes a citizen of the United States at a young age, and is raised with English as her primary language, is no less Hispanic simply because she speaks English more frequently and fluently than she speaks Spanish. In the same vein, a person named Mary Smith who is born in the United States is no more Hispanic simply because she marries and adopts the surname of a man with a traditionally Hispanic name. Although a person’s native language and surname may be used by a trial judge in determining whether a potential juror can be classified as a Hispanic, those characteristics are not strictly dispositive.
Id. at 455. In applying this to the facts in Alen, the Court held that the trial court erred in permitting the State’s use of a peremptory, challenge to remove a Hispanic juror (after the State previously removed another Hispanic juror). In reaching this conclusion, the Court noted that the State failed to explain why it sought to excuse this juror and thus “[b]y failing to show the absence of pretext or that its reasons for excusing [the juror] were supported by the record, the state failed to meet its burden of proof.” Id. at 456.
In Franqui, 699 So.2d at 1334, the defendant attempted to use a peremptory challenge to excuse prospective juror Aurelio Diaz from the jury. After the State summarily challenged the strike, the court inquired as to the reasons for the challenge. Defense counsel responded that he did not like the juror. The court disallowed the strike, finding that defense counsel did not offer a race-neutral reason. Id. On appeal, this Court expressly rejected the argument that the State’s objection was insufficient to permit the trial court to make an inquiry, noting that based on the record, it was obvious that the trial court clearly understood that the objection to the challenge was being made on racial or ethnic grounds, based on the fact that the juror was born and raised in Havana, Cuba, and the juror’s name was Aurelio Diaz. Id. at 1385. The Court further noted that “there was never any contention made to the trial court that prospective juror Diaz was not a member of a cognizable minority or that there should not be a Neil inquiry.” Id. (footnote omitted). In reaching its holding, this Court noted that it had previously encouraged trial judges to err on the side of conducting a Neil inquiry. Id. (citing Slappy, 522 So.2d at 18). However, the Court’s encouragement to hold an inquiry assumed the threshold trigger that the juror was a member of a cognizable class (in that case, Hispanic) had been met.

Whether an Inquiry into the Basis for the Peremptory Challenye Was Appropriate

In this case, the trial court and then the Third District violated our precedent regarding peremptory challenges in two distinct ways. First, the trial court, without anything else in the record, allowed the inquiry because the name Buchholz sounded like a German name.[5] *1114 Throughout the voir dire, Mr. Buchholz never discussed anything that related to his ethnic background. Requiring an inquiry, without establishing that the juror was a member of a cognizable class, was a clear violation of Alen. As this Court has held, determining whether a juror is a part of a cognizable class is a matter of fact, but a juror’s surname, standing alone, is an insufficient basis for such a conclusion: Alen, 616 So.2d at 455. We explained that “[ajlthough such salient characteristics as a person’s native language and surname may represent ethnic commonality, we do not believe that these types of characteristics, standing alone, sufficiently describe Hispanics as a cognizable class....” Id. Thus, “a person named Mary Smith who is born in the United States is no more Hispanic simply because she marries and adopts the surname of a man with a traditionally Hispanic name.” Id.
Second, in upholding the denial of the strike for juror Buchholz, the Third District further erred by misapplying Franqui. According to the Third District, “as’ long as the trial court understands the nature of the objection, an inquiry may be made.” Smith, 1 So.3d at 354 (emphasis added). The Third District has misapplied our decision in Franqui, which does not stand for the proposition that a Melbourne inquiry is proper even if the record does not establish that the juror is a member of a protected group. In Franqui, we simply allowed the parties leeway in making a sufficient objection based on the juror’s race or ethnicity if the record established that a juror was a member of a protected minority. However, under the Third District’s reasoning in the case at hand, a Melbourne challenge would be permissible even if the record never demonstrates that the juror was a member of a cognizable class. Such a holding is contrary to this Court’s long-established precedent regarding the purpose of the law in restricting peremptory challenges. As we have previously stressed, “[tjhe initial presumption is that peremptories will be exercised in a nondiseriminatory manner.” Neil, 457 So.2d at 486.
Here, the only support in the record for the conclusion that Buchholz was German is the trial court’s statement that the juror’s surname sounded “like a German name.” Even assuming that being German is a protected class, in this case the record is devoid of any indication that Buchholz was actually German. As Smith explains, the record is “barren of the juror’s ancestry, national origin or ethnicity.” Many potential jurors have names that may suggest a national origin, even if they and their families have been in this country for generations.
This case is distinctly different from the situation in Franqui, where the record established, that the venireperson at issue (Aurelio Diaz) was born and raised in Cuba and the trial court clearly understood the basis of the objection to the challenge. We further noted in Franqui that the trial court properly held a Neil inquiry, particularly since “there was never any contention made to the trial court that prospective juror Diaz was not a member of a cognizable minority or that there should not be a Neil inquiry.” Id. at *1115 1335 (footnote omitted). This Court’s holding in Franqui did not dispose of the requirement that the venireperson be a member of a protected racial or ethnic group before an inquiry is permitted. We reaffirm Franqui and do not. intend to recede from that decision.
The dissent contends that our decision will result in mini-trials as to whether a juror is indeed a member of a cognizable ethnic class. Contrary to the dissent’s position, nothing within our opinion requires an evidentiary hearing to “prove” whether a potential juror is a member of a distinct ethnic group. In fact, as recognized in Alen, 616 So.2d at 455, many times the identifying trait is physically visible, such as with race and gender.
The dissent further alleges that - it is unworkable to permit a trial court to inquire from a prospective juror whether that juror is a member of a cognizable ethnic class. All that is required is for the trial court to briefly ask a juror as to his or her ethnicity in these rare circumstances where a party has objected to the use of a peremptory challenge on that basis and there is no support in the record as to whether the prospective juror is in fact a member of that cognizable class. Moreover, as to the dissent’s concern with privacy, asking a simple question regarding a juror’s ethnicity is certainly less invasive than other questions which are typical in voir dire, including whether the juror or a member of his or her family has been convicted of a crime or has been the victim of a crime.
In this case, the State, as the opponent of the strike, never demonstrated that the venireperson was a member of a distinct racial or ethnic group, as required by Melbourne, 679 So.2d at 764, and the record does not support any basis for such a conclusion. Thus, as the initial step of the Melbourne guidelines was not satisfied, the trial court erred in denying the use of the peremptory challenge.
Finally, permitting the trial court to inquire as to the basis for a strike without first determining whether the venireperson is a member of a distinct racial or ethnic group misses the very point of the Melbourne inquiry. As this Court stressed in Melbourne, 679 So.2d at 764: “Throughout this: [three-prong] process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.” A contrary holding runs the risk of completely eviscerating the right of a party to exercise a peremptory challenge. In Busby, this Court explained the extensive history of the right to peremptory challenges. Melbourne strikes a balance that preserves the right to peremptory challenges as long as the challenge is not exercised in a discriminatory manner to exclude a protected class. If any juror may be subject to being struck under Melbourne based on no reason other than his or her surname, we not only undermine the intent of Melbourne and its progeny but significantly restrict the right to exercise peremptory challenges without a corresponding benefit.
We understand that trial judges are under an enormous burden to comply with the dictates of Melbourne and its progeny.[6] However, we must always keep in mind that the principles set forth in these cases are intended to eradicate invidious discrimination in juror selection.
CONCLUSION
For the reasons addressed above, we hold that the trial court erred in denying *1116 the use of the peremptory challenge and that the Third District’s opinion is contrary to this Court’s long-standing precedent.[7] Accordingly, we quash the decision of the Third District Court of Appeal in Smith.
It is so ordered.
QUINCE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result only.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., concurs.

. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

. Although there is a dispute as to whether defense counsel agreed that being a German could be a protected class under the law, the defense did not agree that Buchholz was a member of this class. Defense counsel subsequently attempted to correct the record, asserting that he stated being German is not a *1110 recognized minority group. However, this dispute is not relevant to our opinion because the Third District addressed the merits of the case and did not rely on counsel's alleged concession to uphold the trial court's decision. Before this Court, the State does not argue that the defense waived its objection.

. State v. Neil, 457 So.2d 481, 486 (Fla.1984), receded from on other grounds by State v. Johans, 613 So.2d 1319, 1321 (Fla.1993).

. Melbourne v. State, 679 So.2d 759, 764 (Fla.1996).

. The specific objection to the peremptory challenge was based solely on the juror’s eth *1114 nicity — not on his race. The dissent translates this into race and then reanalyzes-the record based on the view that this issue was whether Mr. Buchholz was white. However, this was not the basis for the objection either in the trial court or on appeal. The dissent asserts that the trial judge reviewed the objection because the judge understood, that the challenge was based on the juror’s race. The record does not support this, however. The trial judge was the person who first suggested that this juror was a member of a distinct minority group because his name sounded German.

. In this case, during the jury selection process, the trial court stated that "under our present great, deeply thought out appellate decisions” anyone qualifies as a member of a protected class — a statement which may have been made out of frustration or cynicism.

. We reject the State’s invitation to reconsider our opinion in Busby v. State, 894 So.2d 88 (Fla.2004), in light of the recent case of Rivera v. Illinois, - U.S. -, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009), because this issue is beyond the scope of the conflict below. Further, Rivera would not change this Court's reasoning in Busby.