# Supreme Court of Florida

_____

No. SC16-1235
_____

**MOSES MCCRAY,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[May 25, 2017]

PARIENTE, J.

We have for review McCray v. State, 199 So. 3d 1006 (Fla. 4th DCA 2016),

in which the Fourth District Court of Appeal certified conflict with the Third

District Court of Appeal's decision in McIntosh v. State, 743 So. 2d 155 (Fla. 3d

DCA 1999), "to the extent the results of [McCray] . . . may be perceived to conflict

with McIntosh." McCray, 199 So. 3d at 1010. We accepted jurisdiction based on

this certified conflict. See art. V, § 3(b)(4), Fla. Const.

The issue in this case involves the exercise of peremptory challenges in jury

selection and whether a party has the right to "unstrike," or withdraw a previously

exercised peremptory challenge, when it has exhausted its peremptory challenges and the opposing party subsequently accepts the jury panel.

We agree with the Fourth District that the trial court did not abuse its discretion in denying Petitioner Moses McCray's request to "unstrike" a juror under the circumstances presented. However, we disapprove the Fourth District's decision to the extent that it endorses a blanket rule prohibiting the withdrawal of a peremptory challenge after a party has exhausted its peremptory challenges. As we explain, McIntosh demonstrates that the withdrawal of a peremptory challenge when a party has already exhausted its peremptory challenges could be warranted by unusual or extenuating circumstances. We emphasize, however, that even though a party may exercise an unused peremptory challenge at any time before the jury is sworn and a trial court has discretion to grant additional peremptory challenges, the party does not have a "right" to "unstrike" a juror.

## FACTS

The Fourth District set forth the discussions that occurred during voir dire between the trial court, the parties, and Juror 3.9—the juror McCray sought to remove from the jury panel after exercising his last remaining peremptory challenge on Juror 2.5:

> JUROR 3.9: My name . . . I live in Lake Worth. My occupation, I'm working for school district. I'm a driver. I'm married. My wife is (indiscernible). I do have three

children.  They are high school.  I have never been served jury before.[1]

COURT: Is that a no?

JUROR 3.9: No.  I have never been in crime victim of any crime.  I don't have any friends in law enforcement.  And I will follow the law explained.  And yes, I will give fair trial to both sides.  And no reason I cannot serve.

. . . .

STATE: [Juror 3.9], how are you?

JUROR 3.9: Fine.

STATE: Good.  We have several folks here that have nice accents and I can kind of tell from some individuals having served on prior jury service or their answers that there was no issue with language.  But I wanted to check with you to see you have a nice accent but I want to make sure are you understanding everything that we're saying?

JUROR 3.9: Yes.

STATE: Excellent.  No language problem if you were to serve on the jury?

JUROR 3.9: No.

The defense did not ask Juror 3.9 any direct questions.

During the parties' initial round of cause challenges, the defendant did not challenge Juror 3.9 for cause.

During the parties' peremptory strikes, the defendant used his last peremptory strike on Juror 2.5.  That strike put Juror 3.9 "in the

---

1. The venire panel was asked a series of questions regarding their occupation, family life, past experiences on a jury, and where they resided.  Most jurors gave short answers to each question in sequential order as Juror 3.9 did.

box" as the sixth juror. The state, which had two peremptory strikes remaining, accepted the panel, including Juror 3.9.

The defendant then stated he wanted to challenge Juror 3.9 for cause because he had "a serious question about [Juror 3.9's] ability to speak English."

In response, the trial court stated that Juror 3.9 gave "direct and positive," "appropriate[ ]" answers; "[h]e did not hesitate in response to any questions;" and he appeared insulted or angered when the state questioned his English. The court therefore denied the defendant's cause challenge to Juror 3.9.

The defendant then asked for two additional preemptory strikes, after which the following discussion occurred:

> COURT: And the reason is because I denied your cause challenge [to juror 3.9]?
>
> DEFENSE: Yes, sir.
>
> COURT: That would be denied.
>
> . . . .
>
> DEFENSE: [Judge], can we back-strike or unstrike [Juror 2.5] then?
>
> COURT: Unstrike?
>
> DEFENSE: Or back-strike.
>
> COURT: This is a first for me.
>
> STATE: I have never heard of an unstrike.
>
> COURT: It's not a back-strike because [Juror 2.5 has] already been stricken.
>
> . . . .
>
> DEFENSE: . . . You're right, Judge. We've already stricken [Juror 2.5].

- 4 -

COURT: <u>I don't know how I can unstrike a strike</u> <u>because then that messes up everybody else's decisions</u> <u>on what you struck or so.</u>  That's our jury . . . .

McCray, 199 So. 3d at 1007-08.

The Fourth District held that, based on its precedent in Davis v. State, 922 So. 2d 454 (Fla. 4th DCA 2006), the trial court did not abuse its discretion in denying McCray's motion to "unstrike" Juror 2.5, which was a request to withdraw his last peremptory challenge of Juror 2.5 after he had exhausted his peremptory challenges and the State had subsequently accepted the jury panel.  McCray, 199 So. 3d at 1008.  As the Fourth District explained,

> after the defendant used his last peremptory strike on Juror 2.5, the state accepted the panel, <u>thereby revealing the state's strategy to</u> <u>accept Juror 3.9</u>.  Allowing the defendant to reveal the state's strategy to accept Juror 3.9, and then allowing the defendant to "unstrike" Juror 2.5 in order to strike Juror 3.9, would have prejudiced the state.

Id.

## ANALYSIS

We are presented with the issue of whether, after a party has exhausted its peremptory challenges and the opposing party subsequently accepts the jury panel, a party has the right to withdraw a formerly exercised peremptory challenge on one juror and use that challenge on another juror after the jury panel has been accepted by the opposing party.  "Under our common law, the time and manner of challenging and swearing jurors have traditionally rested within the sound

discretion of the trial court." Tedder v. Video Elec., Inc., 491 So. 2d 533, 534 (Fla. 1986). Accordingly, the standard of review of a trial court's denial of a party's motion to withdraw a formerly exercised peremptory strike is abuse of discretion. We begin our analysis by explaining the process by which parties can ensure during voir dire that specific jurors are not placed on the jury panel. We then discuss the Fourth District's decision below and the certified conflict case, McIntosh, while analyzing whether the Fourth District's decision created a blanket rule prohibiting a party from withdrawing a peremptory challenge after that party has exhausted all peremptory challenges.

**Jury Selection Process**

During jury selection, "Florida law provides both cause and peremptory challenges to both sides involved in criminal proceedings." Busby v. State, 894 So. 2d 88, 98 (Fla. 2004) (citing §§ 913.03, 913.08, Fla. Stat. (2003)). "Section 913.03 of the Florida Statutes outlines the grounds to support cause challenges." Id. As this Court has explained, "[t]he necessity of excusing a juror for cause arises where 'any reasonable doubt exists as to whether the juror possesses an impartial state of mind.' " Hayes v. State, 94 So. 3d 452, 460 (Fla. 2012) (quoting Busby, 894 So. 2d at 95). Cause challenges are "unlimited in number." Id. (citing Busby, 894 So. 2d at 99).

In contrast to cause challenges, peremptory challenges "are limited in number and have traditionally been exercised according to a party's unfettered discretion." Id. This Court has long recognized that peremptory challenges are "one of the most important of the rights secured to the accused." Id. at 459 (quoting Smith v. State, 59 So. 3d 1107, 1111 (Fla. 2011)). In fact, "[a]ffording a criminal defendant the full use of his or her allotted peremptory challenges is an essential part of securing a fair and impartial jury under Florida's constitution, and his or her use of peremptory challenges is limited only by the rule that such challenges may not be used to exclude prospective jurors because of their race, ethnicity, or gender." Id. at 460 (citing Smith, 59 So. 3d at 1111).

Florida Rule of Criminal Procedure 3.350(a) provides that the number of peremptory challenges allowed to a party is determined by the type of offense charged. However, a "trial judge has discretion to grant or deny additional peremptory challenges." Parker v. State, 456 So. 2d 436, 442 (Fla. 1984); accord Fla. R. Crim. P. 3.350(e). Prior to the time the jury is sworn, "[a] trial judge has no authority to infringe upon a party's right to challenge any juror, either peremptorily or for cause." Gilliam v. State, 514 So. 2d 1098, 1099 (Fla. 1987) (quoting Jackson v. State, 464 So. 2d 1181, 1183 (Fla. 1985)). As this Court explained in Gilliam, the "denial of this right is per se reversible error." Id.

Once a jury is sworn but before the presentation of evidence, however, a peremptory challenge may only be granted upon a showing of good cause. Valle v. State, 581 So. 2d 40, 44 (Fla. 1991); see also Fla. R. Crim. P. 3.310 (providing that a party may challenge a prospective juror before the jury is sworn, and only for "good cause" after the jury is sworn but before the presentation of evidence).

Peremptory challenges "work in tandem" with cause challenges to "permit the removal of a potential juror in whom the striking party perceives a certain bias or hostility." Hayes, 94 So. 3d at 460. In other words, peremptory challenges do not entitle a defendant "to have a particular composition of jury." Rich v. State, 807 So. 2d 692, 693 (Fla. 3d DCA 2002) (citing Kibler v. State, 546 So. 2d 710, 712-13 (Fla. 1989)); see also Taylor v. Louisiana, 419 U.S. 522, 538 (1975) ("Defendants are not entitled to a jury of any particular composition.").

As the Court explained in Jackson, one manner of exercising a peremptory challenge before the jury is sworn is through backstriking. 464 So. 2d at 1183. "The term 'backstriking' refers to 'a party's right to retract his acceptance and object to a juror at any time before that juror is sworn.'" Hayes, 94 So. 3d at 456 n.1 (quoting Dobek v. Ans, 475 So. 2d 1266, 1267-68 (Fla. 4th DCA 1985)); see also Hunter v. State, 660 So. 2d 244, 248 (Fla. 1995). For instance, if a juror whom the party previously accepted was placed on the jury panel, a party could

use a remaining peremptory challenge at a later time, but before the jury is sworn, to peremptorily challenge that juror and remove the juror from the jury panel.

McCray contends that his attempted withdrawal of his peremptory challenge of Juror 2.5 cannot be characterized as a "backstrike," but rather as an "unstrike." The term "unstrike" has not been used in any reported decision other than in the lower court's opinion. Based on the facts of this case, the term is best defined as the practice of withdrawing a peremptory challenge used on one juror and then using that same peremptory challenge to exclude another juror. In other words, a party "unstriking" a juror requests that the prior peremptory challenge be withdrawn so that the juror originally challenged is placed back on the jury panel and the peremptory challenge can be used to remove another juror already placed on the jury panel.

Against this backdrop of how a party may exercise peremptory challenges, the question posed by the certified conflict is whether there are limits to the exercise of peremptory challenges. In order to answer this question, we review the Fourth District's decision in McCray and the certified conflict decision, McIntosh.

**McCray and McIntosh**

The Fourth District concluded that McCray's argument that the trial court abused its discretion in not permitting him to withdraw his last exercised peremptory challenge to use on another juror already placed on the jury panel after

the State had accepted the jury panel, "lacks merit, pursuant to our holding in Davis v. State, 922 So. 2d 454 (Fla. 4th DCA 2006)." McCray, 199 So. 3d at 1008. In Davis, "the State used six of its ten peremptory strikes [during jury selection]. The defense used all ten of its peremptory strikes. Thereafter, the jury panel and an alternate was accepted by both sides." Id. (quoting Davis, 922 So. 2d at 455). However, "[d]efense counsel then told the [trial] court that [the defendant] wished to withdraw a peremptory challenge made on one juror and use it to strike another." Id. The trial court denied the request. As the Davis court explained:

> The [trial] court's rationale in denying the "backstrike" request was that the prosecutor's strategy in utilizing peremptory challenges was based partially on the manner in which the defense exercised its peremptory challenges. The court, therefore, concluded that allowing the defendant to withdraw a challenge so late in the process would prejudice the state.

Davis, 922 So. 2d at 455. The Davis court affirmed, reasoning as follows:

> Although it is clearly reversible error to deny a challenge to a juror when the defendant has not exhausted all of his peremptory challenges prior to the jury's being sworn, that is not the case where, as here, a party has exhausted all of its peremptory challenges. Under the facts of this case, we cannot say that the trial court erred in denying [the defendant's] request to withdraw a peremptory [strike] and then backstrike a previously accepted juror.

Id. (citation omitted).

The Fourth District in McCray held that, "[s]imilar to Davis, we cannot say here that the trial court erred in denying the defendant's motion to 'unstrike' Juror 2.5, upon whom he used his last peremptory strike, so that he could use his last

peremptory strike on Juror 3.9," who had previously been placed on the jury panel. McCray, 199 So. 3d at 1008.[2] The Fourth District reasoned that, "as in Davis, after the defendant used his last peremptory strike on Juror 2.5, the state accepted the panel, thereby revealing the state's strategy to accept Juror 3.9. Allowing the defendant to reveal the state's strategy to accept Juror 3.9, and then allowing the defendant to 'unstrike' Juror 2.5 in order to strike Juror 3.9, would have prejudiced the state." Id. (emphasis omitted).

McCray contends that, as opposed to Davis, the Third District's decision in McIntosh applied the proper analysis for evaluating whether a trial court abuses its discretion in refusing a party's request to withdraw a previously exercised peremptory challenge on one juror after the party had exercised all peremptory challenges, to then use that peremptory challenge on a juror already placed on the jury panel. In McIntosh, "at the conclusion of jury selection, the venire panel had been exhausted but only eleven jurors had been selected for the twelve-person

_____

2. McCray also contends that Davis was decided incorrectly because it "applied holdings in backstriking cases in an 'unstriking' context," and therefore the Fourth District's reliance on Davis in McCray was misplaced. We disagree. The rationale in both cases for denying the request for an additional peremptory strike was that allowing an additional peremptory challenge would prejudice the opposing party because the opposing party had accepted the jury. See Davis, 922 So. 2d at 455. Moreover, the only holding the Fourth District applied in Davis was this Court's holding that it is reversible error to deny a request for a peremptory challenge when the party has not exhausted its peremptory challenges. See Hunter, 660 So. 2d at 248-49; Gilliam, 514 So. 2d at 1099.

jury." 743 So. 2d at 156. To complete the jury panel, "the State indicated that it was willing to withdraw the previously exercised peremptory challenge against juror Blanco. The defense objected to this procedure, saying that 'had the State . . . kept her on [the jury] initially, it might have changed some of my decisions after that point.' " Id. The defendant then requested an additional peremptory challenge, "not to exercise against juror Blanco, but instead to exercise against a different juror, juror Rodriguez. Defense counsel indicated that she had accepted juror Rodriguez 'given the contents of the panel at that time.' " Id. The trial court denied the request for the additional peremptory challenge. On appeal, the Third District affirmed, reasoning:

> We find no abuse of discretion in the trial court's seating of juror Blanco over defense objection. If defense counsel predicated the exercise of at least some of the peremptory challenges on the theory that juror Blanco, having been stricken by the State, would not serve on the jury, then it would be understandable if the defense had requested an additional peremptory challenge to strike juror Blanco. In that circumstance, we would have a different case. Juror Blanco was, however, acceptable to the defense and the request instead was to strike a different juror. The claim of harm here was entirely speculative and the objection was properly overruled.

Id. Thus, McCray asserts that McIntosh determined whether a trial court abused its discretion in granting a motion to "unstrike" a juror by evaluating the harm and available remedy resulting from the "unstrike." However, as the State points out, even accepting McCray's argument that McIntosh requires an evaluation of the harm and available remedy in granting a motion to "unstrike" a juror, the Third

- 12 -

District in <u>McIntosh</u> recognized that unstriking can adversely affect a party's jury strategy and may be prejudicial to the opposing party. As the Third District explained, had the defendant in <u>McIntosh</u> objected to the juror the State's proposed "unstrike" sought to place back on the jury panel, then the Third District would have been presented with "a different case." <u>Id.</u>

Accordingly, we conclude that under the particular facts of this case, the trial court did not abuse its discretion in denying McCray's request to "unstrike" Juror 2.5 after McCray had exhausted his peremptory challenges and the State had accepted the jury panel. As the Fourth District explained:

> [A]fter the defendant used his last peremptory strike on Juror 2.5, the state accepted the panel, thereby revealing the state's strategy to accept Juror 3.9. Allowing the defendant to reveal the state's strategy to accept Juror 3.9, and then allowing the defendant to "unstrike" Juror 2.5 in order to strike Juror 3.9, would have prejudiced the state.

<u>McCray</u>, 199 So. 3d at 1008 (emphasis omitted). We agree with the State that sanctioning the practice of withdrawing a peremptory challenge of a juror after the moving party has exhausted its peremptory challenges and the opposing party has accepted the jury "could not fail to be productive of mischief." <u>Biddle v. State</u>, 10 A. 794, 794 (Md. 1887). As Maryland's highest state court explained over a century ago, this practice

> would lead inevitably to experiments in the formation of juries in criminal cases. A party accused might exhaust his right of peremptory challenge, and take his chance of getting jurors more favorable to him from among talesman to be returned; but if disappointed in that, and

- 13 -

in order to exclude parties not liked, he would recall his previous challenges, and take jurors that had been before excluded.

Id. This reasoning is equally sound today.

We note, however, that there may be rare circumstances where the withdrawal of a peremptory challenge after the party has exhausted all peremptory challenges may be appropriate. The Third District's decision in McIntosh, where the venire panel had been exhausted and the juror that one party sought to peremptorily challenge was acceptable to the opposing party, is such a rare circumstance. Thus, to the extent the Fourth District's decision in McCray endorses a blanket rule prohibiting in all circumstances the withdrawal of a peremptory challenge after a party has exhausted such challenges, we disapprove of such language. Such a blanket rule would be incompatible with a "party's right to challenge any juror, either peremptorily or for cause, prior to the time the jury is sworn," which "a trial judge has no authority to infringe upon." Hunter, 660 So. 2d at 248 (quoting Gilliam, 514 So. 2d at 1099). While "denial of this right is per se reversible error" when a party has not exhausted its peremptory challenges, Gilliam, 514 So. 2d at 1099, the exhaustion of a party's peremptory challenges should not automatically foreclose a party's attempt to withdraw a juror prior to the jury being sworn. Indeed, even after a juror is sworn, but before any evidence is presented, a party may challenge the juror for good cause. Fla. R. Crim. P. 3.310.

- 14 -

Our rejection of a blanket rule prohibiting in all instances the withdrawal of a peremptory challenge after a party has exhausted its peremptory challenges must be considered, however, against the backdrop of our previous emphasis that "[p]eremptory challenges merely are a 'means of assuring the selection of a qualified and unbiased jury.' " Jefferson v. State, 595 So. 2d 38, 41 (Fla. 1992) (quoting Batson v. Kentucky, 476 U.S. 79, 91 (1986)). In other words, we emphasize that the rare instance when the withdrawal of a peremptory challenge is granted after a party has exhausted its peremptory challenges must not be the design of gamesmanship, as "[e]stablished case law rejects the proposition that a defendant is entitled to have a particular composition of jury." Rich, 807 So. 2d at 693 (citing Kibler, 546 So. 2d at 712-13); see also Taylor, 419 U.S. at 538.

## THIS CASE

In this case, McCray did not challenge Juror 3.9 for cause or peremptorily prior to exhausting his peremptory challenges. McCray does not claim that any reasonable doubt existed about the juror's impartiality. Only after exhausting his peremptory challenges, when the State—which still had a number of peremptory challenges remaining—accepted the jury panel, did McCray challenge Juror 3.9 for cause. Once the trial court denied the cause challenge, which McCray does not contest, McCray sought two additional peremptory challenges, which the trial court denied and which McCray also does not contest. It was not until after

- 15 -

McCray's unsuccessful efforts to strike Juror 3.9 for cause and obtain two additional peremptory challenges that he sought to withdraw his prior peremptory challenge to Juror 2.5 so that he could use that peremptory challenge to remove Juror 3.9 from the jury panel. At this point, the State had already accepted the jury panel, thereby revealing its jury selection strategy to accept Juror 3.9. Accordingly, under the facts of this case, the trial court did not abuse its discretion in denying McCray's request to withdraw his peremptory challenge of Juror 2.5, since doing so would have prejudiced the State.

## CONCLUSION

Under the facts of this case, we approve the Fourth District's decision that the trial court did not abuse its discretion in rejecting McCray's motion to withdraw his peremptory challenge of Juror 2.5 to instead use that peremptory challenge on Juror 3.9, who was already seated on the jury panel, after McCray had exhausted his peremptory challenges and the State had accepted the jury panel. However, we disapprove the Fourth District's opinion in McCray to the extent that it can be read as endorsing a blanket rule prohibiting in any instance the withdrawal of a peremptory challenge after a party has exhausted its peremptory challenges but before the jury is sworn. As McIntosh demonstrates, after a party has exhausted its peremptory challenges, the withdrawal of a peremptory challenge could be warranted by unusual or extenuating circumstances.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, CANADY, and LAWSON, JJ., concur.
POLSTON, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified
Direct Conflict of Decisions

      Fourth District - Case No. 4D14-907

      (Palm Beach County)

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public
Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

      for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Celia A. Terenzio,
Bureau Chief, and Jeanine Germanowicz, Assistant Attorney General, West Palm
Beach, Florida,

      for Respondent