# Supreme Court of Florida

---

No. SC2022-0984

---

**JAMES SEADLER,**
Petitioner,

vs.

**MARINA BAY RESORT CONDOMINIUM ASSOCIATION, INC.,**
Respondent.

December 21, 2023

SASSO, J.

We have for review *Seadler v. Marina Bay Resort Condominium Ass'n, Inc.*, 341 So. 3d 1146 (Fla. 1st DCA 2021), *reh'g denied* (June 29, 2022), in which the First District Court of Appeal rejected Seadler's claim that he was automatically entitled to a new trial because the trial court erred in denying his cause challenge to a potential juror, an error he properly preserved. Realizing its conclusion conflicted with several other district courts' characterization of the same type of error as one that constitutes a "per se" reversible error, the First District certified conflict. We

accepted jurisdiction based on that certification. *See* art. V, § 3(b)(4), Fla. Const.

In resolving the conflict, we agree with the First District that the harmless error standard applies. Nonetheless, we quash the decision of the First District because, applying the proper harmless error standard here, Marina Bay cannot meet its burden of demonstrating that the error did not contribute to the verdict. We therefore remand for a new trial.

I

This case arises from injuries Seadler sustained at Marina Bay Resort when a pool chair he attempted to sit in collapsed. The case ultimately proceeded to a jury trial where the parties used a common jury selection methodology intended to produce a panel of six jurors. The First District described it in detail:

> The parties were to select six jurors and two alternates from a venire, but the trial court had the parties address ten randomly selected venirepersons at a time. The first six randomly selected from the venire would be put "in the box" as a panel of presumptive principal jurors. The next two would be a panel of presumptive alternates. And the final two would be "on deck." To pick the principal jurors, for-cause and peremptory strikes would be exercised just on those six venirepersons "in the box" at the time. When a party would strike a presumptive juror from this principal panel, a venireperson from the

alternate panel would move in, and the resulting empty slot on the alternate panel would be filled by someone from the "on-deck" panel.

. . .

This process . . . would continue until the parties have no further for-cause challenges and each has either exhausted the allotted three peremptory challenges or tendered the principal panel as acceptable.

At this point, the parties would turn to the presumptive alternates, and each party could move to strike only from the alternate panel, based on cause, or use the single peremptory challenge the party is allowed by rule for this part of the process. If one of the parties strikes a presumptive alternate from the panel, then each venireperson behind that stricken alternate juror would move up to fill the vacated spot to the left.

. . .

Once the parties have exhausted their alternate strikes, or tendered the alternates as acceptable, the presumptive principal jurors [and alternates] would be sworn in. The trial then would commence.

*Seadler*, 341 So. 3d at 1147-50.

During this selection process, Juror 16 (one of the presumptive principal jurors) answered in the affirmative when Seadler's counsel asked him whether Seadler had a "strike against him" before the trial even began based on Juror 16's feelings regarding frivolous lawsuits. Based on this answer, Juror 16 was questioned separately out of concern that he would taint the entire venire.

- 3 -

When questioned separately, Juror 16 again expressed doubt about his ability to remain fair and impartial in the case. Even so, when the court presented the jury instruction on pain and suffering to Juror 16, he indicated he would follow it. But directly following his exchange with the court, Juror 16 again equivocated, stating: "[I]f evidence is presented to me, strictly evidence, I would be fair. But if you or another lawyer presented it with emotion, then I couldn't be. Because I-- facts. I don't . . . ."

At that point, Seadler asserted bias and asked that Juror 16 be excused for cause. The trial court refused Seadler's request without explanation, so Seadler used the first of his three peremptory challenges to remove Juror 16 instead.

The First District described the relevant remainder of the selection process:

> As the selection process continued, the trial court excused other presumptive principal jurors for cause, and Seadler used his remaining two peremptory challenges. After Marina Bay tendered the six presumptive principals, Seadler asked for a fourth peremptory challenge. He already had exhausted his peremptory challenges (he used the third one to strike Juror 8), and he wanted to strike Juror 22. By the very nature of a peremptory challenge, Seadler did not have to explain why Juror 22 was objectionable, and he did not do so. The trial court denied the request.

- 4 -

*Id.* at 1151.

Thereafter, the trial court elected to seat two alternate jurors and provided the parties with one additional peremptory challenge to use solely on the presumptive alternate jurors. Seadler's counsel asserted cause challenges as to two prospective alternates, which the trial court granted. He then used his sole peremptory challenge available for alternate jurors on Juror 12.

With the presumptive primary panel and alternates in place, but before the jury was sworn, Seadler renewed his request to strike Juror 22. Acknowledging that his objection to Juror 22 was not for cause, he nonetheless claimed that he would not receive a fair trial with Juror 22 on the jury. The trial court once again denied Seadler's request, and Juror 22 was sworn in as a principal juror.

After the jury was empaneled, the trial proceeded, and Seadler presented evidence that he had incurred $154,435.04 in past medical expenses. Ultimately, the jury returned a verdict of $50,000.00 for past medical expenses and $10,000.00 to

compensate for past pain and suffering. Following setoffs, the trial court entered a final judgment in favor of Seadler in the amount of $14,504.50.

Seadler appealed the final judgment to the First District where he argued that the judgment should be reversed because the trial court abused its discretion in denying his motion to strike Juror 16 for cause. Seadler contended he was entitled to a new trial "because the failure to grant a cause challenge cannot be harmless as a matter of law."

The First District rejected Seadler's arguments and affirmed the final judgment. In doing so, the First District did not reach a decision as to the issue raised by Seadler: whether or not the trial court abused its discretion in denying the cause challenge. Instead, the First District reasoned that, even if the trial court had erred, Seadler was not entitled to a new trial because "one way or another . . . Seadler was going to be stuck with a juror that he otherwise wished to strike peremptorily." *Seadler*, 341 So. 3d at 1156.

In support of its conclusion, the First District's opinion attempted to play out an alternative scenario in which Seadler was permitted to use a peremptory strike on Juror 22. The First District

- 6 -

concluded that had Seadler been permitted to do so, Juror 12, whom Seadler also found objectionable, would have ended up on the presumptive principal panel rather than the presumptive alternate panel. In that scenario, Seadler would have been without an additional peremptory to strike Juror 12. So, while acknowledging that a party might use a different "tactical calculus" when exercising peremptory challenges on the main panel as opposed to the alternate panel, the First District concluded that a subjectively objectionable juror would have sat on the jury regardless of whether the trial court erred. For this reason, the First District held that Seadler could not demonstrate a "miscarriage of justice," as required by section 59.041, Florida Statutes, and therefore, it had no authority to reverse the judgment or grant a new trial.

In a motion for rehearing, Seadler raised two points that ultimately led to supplemental opinions and the certified conflict giving rise to this Court's jurisdiction. First, Seadler argued that the First District's analysis was contrary to precedent characterizing a preserved, erroneous denial of a cause challenge as "per se" reversible. Second, Seadler argued that the First District's

- 7 -

opinion "employs a harmless error analysis not previously adopted by the Florida Supreme Court or any of the five district courts of appeal."

The First District denied rehearing, but certified conflict with several other district court decisions.[1] Seadler petitioned this Court for review of the First District's decision and the certified conflict. This Court accepted jurisdiction to resolve this conflict.

## II

This is the first case in which this Court has addressed the implications of an erroneous denial of a cause challenge in the context of civil cases.[2] However, in the certified conflict cases, the

---

1. *See Seadler*, 341 So. 3d at 1156 (citing *Kochalka v. Bourgeois*, 162 So. 3d 1122, 1126 (Fla. 2d DCA 2015); *Tizon v. Royal Caribbean Cruise Line*, 645 So. 2d 504 (Fla. 3d DCA 1994); *Weinstein Design Grp., Inc. v. Fielder*, 884 So. 2d 990 (Fla. 4th DCA 2004); *Gootee v. Clevinger*, 778 So. 2d 1005 (Fla. 5th DCA 2000)).

2. Although the issue was not resolved in the First District's decision, we agree with Seadler that the trial court abused its discretion in denying his challenge to Juror 16 for cause. *See Hill v. State*, 477 So. 2d 553, 556 (Fla. 1985) ("A juror is not impartial when one side must overcome a preconceived opinion in order to prevail."). And we note that while Seadler addressed this issue in his briefing in this Court, Marina Bay did not present argument to the contrary.

Second, Third, Fourth, and Fifth District Courts of Appeal have extrapolated from this Court's precedent in the criminal context a "per se reversible error" rule that requires automatic reversal in civil cases when an erroneous denial of a cause challenge is properly preserved. *See, e.g.*, *R.J. Reynolds Tobacco Co. v. Gloger*, 338 So. 3d 977, 980 (Fla. 3d DCA 2022) (noting holding in *Matarranz v. State*, 133 So. 3d 473, 483 (Fla. 2013), that it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause); *Gootee*, 778 So. 2d at 1009-10 (citing *Hill v. State*, 477 So. 2d 553 (Fla. 1985), for the proposition that "[i]t is reversible error [in a civil case] to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied."). Given this backdrop, both Seadler and Marina Bay spill significant ink over the applicability of this Court's precedent in the criminal context to this case. For his part, Seadler argues the outcome in this case is "controlled" by longstanding precedent, including *Hill* and *Trotter v. State*, 576 So. 2d 691 (Fla.

1990).[3]  The State appears to agree and urges this Court to recede from *Hill.*  Marina Bay, on the other hand, argues the distinctions between criminal and civil cases render *Hill* and its progeny inapplicable here.

On this point, we agree with Marina Bay that this Court's precedent regarding the effect of erroneously denied cause challenges in criminal cases does not apply with equal force in civil cases.  *Hill* referred to an accused's "right" to peremptory challenges.  477 So. 2d at 556.  In *Smith v. State,* 59 So. 3d 1107 (Fla. 2011), we recognized that although peremptory challenges are not themselves constitutionally guaranteed at either the state or federal level, they are "nonetheless 'one of the most important rights secured to the accused.' "  *Id.* at 1111 (citing *Busby v. State,* 894 So. 2d 88, 98 (Fla. 2004)).  And in *Matarranz v. State,* 133 So. 3d

---

3.  In *Trotter,* this Court held that in order to preserve the denial of a challenge for cause for review, the complaining party must exhaust peremptory challenges, request an additional peremptory challenge, and identify an objectionable juror who would not have been seated if a peremptory challenge had been available.  576 So. 2d at 693.

473, 484 (Fla. 2013), we tied our analysis to a criminal defendant's "due process right to a fair and impartial jury."

Because this Court's analysis in the criminal context has specifically relied on the rights of criminal defendants, we consider the issue presented here one of first impression and limit our holding to civil cases.

## III

We now turn to resolving the conflict presented by this case: whether a trial court's error in denying a cause challenge is "per se" reversible error so long as the error is properly preserved,[4] or whether a harmless error analysis applies.

As we explained in *Davis v. State*, 347 So. 3d 315 (Fla. 2022), in determining whether a "per se" or a harmless error standard applies, this Court defaults to the harmless error test, reserving the "per se" rule "only for those errors that always vitiate the right to a

---

4. The logic of *Trotter*'s preservation requirement applies in both criminal and civil cases.  Neither criminal nor civil litigants can "stand by silently while an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial." *Trotter*, 576 So. 2d at 693.

- 11 -

fair trial and therefore are always harmful." *Id.* at 323 (quoting *State v. Schopp*, 653 So. 2d 1016, 1020 (Fla. 1995)). "Per se" errors therefore fall into two categories: first, cases where "application of the harmless error test to the type of error involved will always result in a finding that the error is harmful . . . . [and second,] cases where the appellate court is unable to conduct a harmless error analysis because it would have to engage in pure speculation in order to attempt to determine the potential effect of the error on the jury." *See id.* at 324 (internal citations omitted).

Neither of those categories properly encompass the erroneous denial of a cause challenge. We can conceive of, and amici have identified, scenarios where even a properly preserved error denying a cause challenge may result in harmless error. For example, the denial of a cause challenge would be harmless when the juror whom a party would have otherwise struck peremptorily did not ultimately deliberate or when no reasonable jury could have permissibly granted the appellant more relief than he received. In these and other scenarios, the application of the harmless error test would neither always result in a finding that the error is harmful

nor require speculation in order to determine the potential effect of the error.

For these reasons, we cannot say that the erroneous denial of a cause challenge is always harmful and so vitiates the right to a fair trial that it is "per se" reversible error. We therefore agree with the First District's conclusion that harmless error is the appropriate standard for reviewing the erroneous denial of a properly preserved cause challenge. And we resolve the conflict in favor of the First District to the extent it is consistent with this opinion.

IV

This conclusion does not end our inquiry, though. Here, we are presented with the common scenario where the error impacted the identity of the six jurors who rendered a verdict that was at least partially adverse to the appellant. Our next step then is to ask whether the error in this case was harmless.

The First District appeared to ask the same question, but it did not apply nor address this Court's harmless error standard as required by *Special v. West Boca Medical Center*, 160 So. 3d 1251 (Fla. 2014). That standard places the burden on the beneficiary of the error to prove "beyond a reasonable doubt that the error

- 13 -

complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the [verdict]." *Id.* at 1256 (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986)).[5] And we said in *Special* that test "is consistent with the harmless error rule codified in section 59.041, and the Legislature's intent that relief be granted only in the event of 'a miscarriage of justice.' " *Id.* at 1257.

Instead of applying this Court's precedent though, the First District ostensibly went straight to section 59.041 and applied its own "miscarriage of justice" test without acknowledging our analysis and holding in *Special*. In doing so, the First District inverted the standard and denied Seadler's requested relief because of "the absence of a demonstration by Seadler that a miscarriage of justice stemmed from the asserted error by the trial court." *Seadler*, 341 So. 3d at 1156. In that respect, the First District erred.

---

5. Neither party has argued that this Court's decision in *Special* was erroneously decided.

As a result, for the first time over the course of the proceedings in this case, Marina Bay is asked whether it can satisfy its burden of demonstrating beyond a reasonable doubt that the error complained of did not contribute to the verdict. Marina Bay argues it can satisfy this burden, reasoning that even if Seadler struck Juror 22, another subjectively objectionable juror (Juror 12) would have made the jury. Adopting the First District's analysis, Marina Bay therefore posits that regardless of the trial court's error, Seadler would have had an objectionable juror participating. Assuming arguendo that were the case, Marina Bay cannot square that argument with this Court's harmless error standard as announced in *Special.*

Florida Rule of Civil Procedure 1.431(d) entitles parties to peremptory challenges and is structured to establish parity as to the number of peremptory challenges granted to each side of a case. Because of established precedent relating to preservation of error, the erroneous denial of a cause challenge necessarily results in the loss of one of these peremptory challenges. Here, had Seadler not expended the peremptory challenge on Juror 16, his claim of error would have been barred from review. Because he was forced to use

the peremptory challenge in this manner, he therefore lacked the ability to strike Juror 22. And Marina Bay cannot, and has not attempted to, demonstrate there is no reasonable possibility that Juror 22 did not contribute to the verdict. Its theory to the contrary is predicated on its argument that jurors are fungible (i.e., that there is no difference between the subjectively objectionable Jurors 12 and 22) and does not account for the tactical latitude afforded to parties in exercising peremptory challenges.

For this reason, under the facts of this case, we cannot say beyond a reasonable doubt that the loss of a peremptory challenge did not contribute to the verdict. Thus, applying the appropriate harmless error standard, Seadler is entitled to a new trial, and we quash the First District's opinion holding to the contrary.

V

Two final observations. First, given our holding today, informed readers will recognize that our application of the harmless error standard in this case will apply similarly to a large subset of cases involving the erroneous denial of a cause challenge. We agree. Even so, for the reasons explained above, this error is not properly characterized as a "per se" reversible error. Thus, rather

- 16 -

than reflexively reversing in every case that presents this type of error, parties will need to advance, and courts will need to apply, a fact-specific harmless error analysis.

We also note that in reaching our decision today, we have rejected the State's suggestion that this Court align itself with federal courts and other state courts that have concluded that any error in denying a cause challenge is cured, and therefore not reversible error, when a party removes the juror utilizing a peremptory challenge. Neither the federal courts nor the other state courts adopting that standard apply both Florida's unique preservation rules in this context and our harmless error standard as announced in *Special.*

## VI

In conclusion, we resolve the certified conflict in favor of the First District to the extent it is consistent with this opinion. However, applying the proper harmless error standard here, we conclude that Marina Bay has not demonstrated that the trial court's error did not contribute to the verdict. We therefore quash the decision of the First District to the extent that it concluded there was no harmful error in this case and remand for a new trial.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, FRANCIS, JJ., concur.
GROSSHANS, J., concurs with an opinion.
LABARGA, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

GROSSHANS, J., concurring.

I agree with the majority that errors in refusing to grant for-cause challenges in civil cases are subject to harmless error review and that Marina Bay has not met the standard we adopted in *Special*. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014) ("Although the test for harmless error as stated in *DiGuilio* applies to criminal appeals, we conclude that this test, with slight modification to accommodate the civil context, is also the appropriate test for harmless error in civil appeals."). As noted by the majority, the State asked us to consider a different standard, one not compatible with *Special*'s harmless error test. Because no party has demonstrated a basis, at this time, for receding from *Special*, we are bound to apply that standard in this case.

Application for Review of the Decision of the District Court of Appeal
    Certified Direct Conflict of Decisions

    First District - Case No. 1D19-850

(Okaloosa County)

Charles F. Beall, Jr. and Jessica L. Scholl of Moore, Hill & Westmoreland, P.A., Pensacola, Florida,

    for Petitioner

Lissette Gonzalez of Cole, Scott & Kissane, P.A., Miami, Florida,

    for Respondent

Carlos J. Martinez, Public Defender, and John Eddy Morrison Assistant Public Defender, Eleventh Judicial Circuit of Florida, Miami, Florida; Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, Fifteenth Judicial Circuit of Florida, West Palm Beach, Florida; and Jessica J. Yeary, Public Defender, and Justin F. Karpf, Assistant Public Defender, Second Judicial Circuit of Florida, Tallahassee, Florida,

    for Amicus Curiae Florida Public Defender Association, Inc.

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida; and John S. Mills of Bishop & Mills, PLLC, Jacksonville, Florida,

    for Amicus Curiae Florida Justice Association

P. Raúl Alvarez, Jr. of Alvarez, Winthrop, Thompson & Smoak, P.A., Orlando, Florida,

    for Amicus Curiae Florida Chapters of the American Board of Trial Advocates

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and David M. Costello, Deputy Solicitor General, Office of the Attorney General, Tallahassee, Florida,

    for Amicus Curiae State of Florida